The TRAVELERS INSURANCE
COMPANY, Plaintiff,

v.

BUFFALO REINSURANCE COMPANY,
Fremont Syndicate, Inc., Maiden Lane
Syndicate, Inc., Pan Atlantic Investors,
Ltd., Republic Insurance Company and
South Place Syndicate, Inc., Defendants.

No. 86 Civ. 3369 (JMC).

United States District Court,
S.D. New York.

Feb. 9, 1990.

Dennis G. Jacobs, Simpson Thacher & Bartlett, New York City, for plaintiff Travelers.

Philip J. Walsh, Wilson Elser Moskowitz Edelman & Dicker, New York City, for defendant Buffalo Re.

Clifford H. Schoenberg, Miller Singer Raives & Brandes, P.C., New York City, for defendants Fremont Syndicate, Maiden Lane Syndicate, Pan Atlantic Investors, Republic Ins. Co., and South Place Syndicate.

## MEMORANDUM AND ORDER

CANNELLA, District Judge:

Defendants' motion for summary judgment is granted. Fed.R.Civ.P. 56. Plaintiff's motion for leave to file a sur-reply memorandum in further opposition to defendants' motion for summary judgment is denied. Defendants' cross-motion to strike plaintiff's sur-reply memorandum as improperly submitted is granted. Defendants' request for costs and attorneys' fees in connection with the cross-motion is denied.

## BACKGROUND

Plaintiff, Travelers Insurance Company ["Travelers"], seeks a declaration that defendants are obligated to indemnify Travelers pursuant to certain reinsurance contracts for a portion of the losses Travelers paid to one of its insureds.

### Koppers Coverage

Koppers Company, Inc. ["Koppers"] is a diversified manufacturing corporation that marketed a variety of roofing products, including several different kinds of prefabricated laminate sheets known as Koppers Multipurpose Membranes ["KMM"]. Travelers issued a series of comprehensive general liability insurance policies to Koppers covering the period May 1, 1981 through January 1, 1985 [the "Koppers policies"]. Each Koppers policy provides $5 million of coverage for each occurrence and in the aggregate for products liability property damage claims. In pertinent part, the policies furnish coverage for "all sums which the insured becomes legally obligated to pay as damage because of bodily injury or property damage to which this insurance applies *caused by an occurrence....*" Affidavit of Clifford H. Schoenberg in Support of Motion for Summary Judgment, Exh. 21, at T20295, 86 Civ. 3369 (JMC) (S.D.N.Y. Aug. 25, 1988) (emphasis added) ["Schoenberg Affidavit"].

### Reinsurance Coverage

Shortly after Travelers issued the Koppers policies, Travelers made arrangements to reinsure portions of its Koppers risk in the reinsurance market. Reinsurance gen-

erally denotes "that undertaking whereby one insurer agrees to protect another insurer, known as the reinsured, either wholly or partially from a risk which it has undertaken, both policies being in effect at the same time, and the original insured having no interest in the reinsurance." J.A. Appleman & J. Appleman, 13A *Insurance Law & Practice* § 7681, at 484–85 (1976). Through the use of O'Connor Associates ["O'Connor"], a reinsurance intermediary, Travelers obtained certificates of facultative reinsurance [the "Certificates"] from defendants Buffalo Reinsurance Company ["Buffalo Re"], Fremont Syndicate, Inc. ["Fremont"], Maiden Lane Syndicate, Inc. ["Maiden Lane"], Pan Atlantic Investors, Ltd. ["Pan Atlantic"], Republic Insurance Company ["Republic"], and South Place Syndicate, Inc. ["South Place"] [collectively, the "Reinsurers"]. Buffalo Re was the principal reinsurer of Travelers' primary policies with Koppers, providing the highest layer of per occurrence continuing excess coverage for each of the policy years. *See* Buffalo Reinsurance Company's Statement Pursuant to S.D.N.Y. Civil Rule 3(g), at ¶ 4, 86 Civ. 3368 (JMC) (S.D.N.Y. Sept. 15, 1988). Each of the remaining Reinsurers provided varying amounts of facultative reinsurance to Travelers under their respective Certificates for covered losses on a per occurrence basis where any single occurrence produced a covered loss that exceeded $500,000. *See* Certain Defendants' Statement Pursuant to S.D.N.Y. Civil Rule 3(g), at ¶ 4, 86 Civ. 3368 (JMC) (S.D.N.Y. Aug. 25, 1988) ["Certain Defendants' 3(g) Statement"].

*Reinsurance Notice Obligations*

The Reinsurers employed two different forms of facultative reinsurance Certificates. The standard notice of loss clause in the Certificates provides that Travelers:

will notify [the] Reinsurer promptly of any event or development which the Company [Travelers] reasonably believes might result in a claim against [the] Reinsurer.

Republic Insurance Company Certificate of Casualty Facultative Reinsurance, at ¶ 5(a), in Schoenberg Affidavit, Exh. 2. However, as to those Reinsurers who were underwriting members of the New York Insurance Exchange—Fremont, Maiden Lane, Pan Atlantic, and South Place—the Certificates provided that Travelers:

shall advise the Underwriter(s) promptly of any claim and any subsequent developments pertaining thereto which, in the opinion of the Company [Travelers], may involve the reinsurance hereunder.

New York Insurance Exchange Certificate of Casualty Facultative Reinsurance, at ¶ 2, in Schoenberg Affidavit, Exh. 2. In addition to the notice provisions, both forms provide that the Reinsurers shall have the right to associate with the full cooperation of Travelers in the defense or control of any claim involving the reinsurance.

*KMM Claims*

Beginning in early 1983, Koppers experienced an increasing number of product liability claims arising from premature failures of the KMM roofing system. By March of 1984, overwhelmed by the volume of the claims, Koppers sought outside claims-handling assistance. Koppers contacted a Travelers subsidiary engaged in claims adjusting, Constitution State Service Company ["CSSC"], which in turn advised Travelers of the existing KMM claims. Although Koppers believed that these claims were not covered under its policies, Travelers determined that it was bound by ethical claims-handling practices to apprise its insured that indemnity coverage may exist. Moreover, based upon further investigation of the KMM claims, Travelers determined that the widespread and invariable pattern of premature failure in virtually all KMM roofs evinced a single cause of the failures and, therefore, the hundreds of KMM claims constituted but one "occurrence" per policy year. Accordingly, in late March or early April 1984, Travelers advised Koppers that coverage may exist for the KMM claims on a single occurrence per policy year basis.[1]

**1.** Since the Court's inquiry is limited to the issue of whether notice was timely, the Court shall

not consider whether Travelers' coverage determinations were correct as a matter of law.

*Notice to Reinsurers*

On June 18, 1984, the Travelers claim representative handling the Koppers account determined that the Reinsurers should be placed on notice. Subsequently, on June 22, 1984, Travelers advised O'Connor, the reinsurance intermediary, to notify the Reinsurers of the KMM claims. *See* Schoenberg Affidavit, at Exh. 10. While the notice to O'Connor disclosed the approximate number of pending and anticipated claims along with the estimated cost to replace the defective product, it did not disclose any coverage decision made by Travelers, including the single occurrence determination. On December 19, 1984, O'Connor forwarded the initial notice of the KMM claims to the Reinsurers. It was not until April 17, 1985, however, that O'Connor forwarded subsequent status reports prepared by Travelers disclosing the single occurrence determination. *See* Schoenberg Affidavit, at Exh. 11.

The Reinsurers now move for summary judgment as a result of Travelers' failure to provide timely notice of the KMM claims. Travelers opposes the motions and moves to file a sur-reply memorandum in further opposition to the Reinsurers' motion for summary judgment. The Reinsurers oppose the motion and cross-move to strike Travelers' sur-reply memorandum as improperly submitted and to recover costs and attorneys' fees incurred in connection with the cross-motion.[2]

## DISCUSSION

### I. *Leave to File Sur-reply and Cross-motion to Strike*

Travelers moves to file a sur-reply in further opposition to the Reinsurers' motion for summary judgment. The Reinsurers oppose the motion and cross-move to strike Travelers' sur-reply memorandum as improperly submitted and to recover costs and attorneys' fees in connection with the cross-motion.

██ Travelers' motion for leave to file a sur-reply memorandum suffers from a fundamental procedural defect. Since neither the Federal Rules of Civil Procedure nor the Local Civil Rules address the standard for submission of sur-reply papers, the Court finds that a sur-reply memorandum shall not be accepted without *prior* leave of court. However, Travelers submitted its sur-reply memorandum contemporaneously with its request for leave to file such a memorandum. As one court in this district has noted:

> The proposed ... papers should not accompany the request for leave to submit them. To permit the ... papers to accompany the request, as they do in the instant case, is to enable the requesting party to accomplish its goal of placing the papers before the court, thereby reducing the question of whether the papers should be accepted for filing to relative unimportance. Therefore, the ... papers themselves shall not be submitted until the court, having received and reviewed the application to file, invites them.

*United States v. International Business Machines Corp.*, 66 F.R.D. 383, 385 (S.D.N.Y.1975) (discussing submission of reply papers).

██ In addition to this procedural defect, Travelers' request to file a sur-reply memorandum is simply not warranted under the circumstances. Travelers contends that sur-reply papers are justified since defendants' reply papers address numerous issues for the first time. Such an argument, however, misconstrues the very purpose of reply papers. The moving party may address in his reply papers new issues raised in the opposition papers so as to avoid giving an unfair advantage to the answering party who took it upon himself to argue those previously unforeseen issues. *See id.* at 384. Although defendants' reply papers addressed issues not raised in its moving papers, each point in the reply brief

---

**2.** All Reinsurers other than Buffalo Re also move to stay discovery pending disposition of the summary judgment motion. The Reinsurers also seek leave to amend their answers to assert an additional affirmative defense and counterclaim. Due to the Court's disposition of the summary judgment motion, these motions are summarily denied as moot.

directly responds to an issue raised in Travelers' opposition papers.

As Travelers' sur-reply memorandum was improperly submitted, defendants' motion to strike the sur-reply is granted. The Court has not considered the sur-reply memorandum or the rebuttal memorandum in reaching its decision. Defendants' motion for costs and attorneys' fees incurred in connection with it cross-motion is denied.

## II. *Summary Judgment*

### A. Standards for the Application of Summary Judgment

■ The standard in the Second Circuit for granting summary judgment in contract cases is well established. In an "action on a contract ... summary judgment is perforce improper unless the terms of the agreement are 'wholly unambiguous.'" *Wards Co. v. Stamford Ridgeway Assocs.*, 761 F.2d 117, 120 (2d Cir.1985) (quoting *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975)). The moving party must establish that the contractual language is not "susceptible of at least two fairly reasonable meanings." *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir.1983). In determining the existence of a "fairly reasonable meaning," the court must bear in mind that "it is the rare sentence that cannot be read in more than one way if the reader is willing either to suspend the rules of common English usage or ignore the conventions of a given commercial setting." *Wards Co.*, 761 F.2d at 120.

■ When contract language is susceptible of at least two fairly reasonable meanings, "a material issue exists concerning the parties' intent, and the non-moving party has a right to present extrinsic evidence regarding the meaning of the contested term." *Id.* Accordingly, "where the text of an agreement reasonably allows for varying interpretations—whether by the inadvertence or design of the draftsman—the need for judicial construction cannot, and may not, be avoided." *Id.* (citing *Grand Union Co. v. Cord Meyer Dev. Corp.*, 735 F.2d 714, 717 (2d Cir.1984); *Schering*, 712 F.2d at 9). Of course, these principles should nevertheless be read in light of the standards for the application of summary judgment in Rule 56.

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment if it determines that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). For the issues of fact to be "genuine," they must provide a basis for "a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The mere existence of disputed factual issues, however, is not enough to defeat a motion for summary judgment. *See Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 11–12 (2d Cir. 1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *Quarles v. General Motors Corp.*, 758 F.2d 839, 840 (2d Cir.1985) (per curiam). The unresolved issues must be "material to the outcome of the litigation." *Knight*, 804 F.2d at 11. It stands to reason that, in order to be material, the disputed issues must implicate cognizable legal principles upon which recovery may be had or liability denied, thus entitling the moving party to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Kronfeld v. Trans World Airlines*, 832 F.2d 726, 731 (2d Cir.1987), *cert. denied*, 485 U.S. 1007, 108 S.Ct. 1470, 99 L.Ed.2d 700 (1988). With respect to materiality, the Supreme Court has noted that "the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

### B. Choice of Law

■ Travelers contends that the law of Connecticut is the proper choice of law while the Reinsurers argue that the law of

New York is proper. The question of which law governs this action becomes significant since there is a conflict of law between New York and Connecticut governing an insured's failure to give prompt notice to its insurer. New York law does not require an insurer to establish prejudice in order to disclaim liability based on the insured's failure to give prompt notice of an occurrence for which the insurer may incur liability. *See Security Mut. Ins. Co. v. Acker–Fitzsimons Corp.*, 31 N.Y.2d 436, 440, 293 N.E.2d 76, 78, 340 N.Y.S.2d 902, 905 (1972). In Connecticut, however, an insurer must prove prejudice from the insured's delay in providing notice in order to disclaim coverage. *See Aetna Casualty & Sur. Co. v. Murphy*, 206 Conn. 409, 417–18, 538 A.2d 219, 223 (1988).

■ A federal district court sitting in diversity looks to the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Aetna Casualty & Sur. Co. v. General Time Corp.*, 704 F.2d 80, 82 (2d Cir.1983). In the absence of an express contractual choice of law provision, New York courts resolve choice of law issues in contract actions by employing an interest analysis, which looks to the competing contacts of each jurisdiction to determine which has the greater interest in the application of its law. *See, e.g., Intercontinental Planning, Ltd. v. Daystrom, Inc.*, 24 N.Y.2d 372, 382, 248 N.E.2d 576, 581, 300 N.Y.S.2d 817, 825 (1969); *Auten v. Auten*, 308 N.Y. 155, 161, 124 N.E.2d 99, 102 (1954); *accord Hutner v. Greene*, 734 F.2d 896, 899 (2d Cir.1984); *Zanfardino v. E–Systems, Inc.*, 652 F.Supp. 637, 639 (S.D.N.Y.1987). However, not all contacts are relevant in defining which jurisdiction has the predominant interest in the protection or regulation of the rights involved. Rather, " '[c]ontacts obtain significance only to the extent that they relate to the policies and purposes sought to be vindicated by the conflicting laws.' " *Miller v. Miller*, 22 N.Y.2d 12, 17, 237 N.E.2d 877, 880, 290 N.Y.S.2d 734, 738 (1968) (quoting *In re Estate of Crichton*, 20 N.Y.2d 124, 135 n. 8, 228 N.E.2d 799, 806 n. 8, 281 N.Y.S.2d 811, 820 n. 8 (1967)).

An examination of the contacts which New York and Connecticut have with the instant controversy requires the court "first to isolate the issue, next to identify the policies embraced in the laws in conflict, and finally to examine the contacts of the respective jurisdictions to ascertain which has a superior connection with the occurrence and thus would have a superior interest in having its policy or law applied." *Dym v. Gordon*, 16 N.Y.2d 120, 124, 209 N.E.2d 792, 794, 262 N.Y.S.2d 463, 466 (1965), *overruled on other grounds, Tooker v. Lopez*, 24 N.Y.2d 569, 249 N.E.2d 394, 301 N.Y.S.2d 519 (1969).

■ Turning to the instant action, the central issue is whether a reinsured's failure to provide timely notice to its reinsurer discharges the reinsurer's obligations absent a showing of prejudice to the reinsurer. The purpose of notice of loss provisions in a primary insurance contract is "to afford the insurer an adequate opportunity for investigation, to prevent fraud and imposition upon it, and to enable it to form an intelligent estimate of its rights and liabilities before it is obligated to pay." *See* G. Couch, 19 *Couch on Insurance 2d* § 49:2, at 227 (2d ed.1983). The Connecticut rule requiring an insurer to prove prejudice in order to disclaim coverage on late notice grounds is designed to protect the interest of unsophisticated insureds from the often technical notice provisions drafted by insurers. In the absence of prejudice to the insurer, the insured's late notice is nothing more than harmless error. The New York rule, on the other hand, serves to protect New York insurers by permitting them to rely on the finality of notice of loss clauses.

Finally, the Court addresses the question of which state has the most significant contacts to support the application of its law in the interpretation of the instant reinsurance contracts. Travelers, the reinsured, is a Connecticut corporation with its principal place of business in Connecticut. O'Connor, the reinsurance intermediary that arranged the reinsurance program for the Koppers policies, is also located in Connecticut. Reinsurers Fremont, Maiden

Lane, and South Place are New York corporations that maintain their principal place of business in New York. Pan Atlantic is a Delaware corporation with its principal place of business in New York. Buffalo Re and Republic are foreign corporations admitted to transact business in New York as a reinsurer. In addition, the reinsurance Certificates were issued in New York—primarily by the New York Insurance Exchange, a broker intermediary market—and any obligation to perform on the Certificates would appear to arise in New York.[3]

Based on these contacts, New York's interest appears to be paramount. New York plainly has an interest in guiding the interpretation of contracts issued in New York and to be performed there by reinsurers that are either incorporated in New York, maintain a principal place of business in New York, or are admitted to transact business as reinsurers in New York. New York's policy of permitting its insurers to rely upon the finality of notice of loss provisions is clearly implicated. On the other hand, the interest of Connecticut is more attenuated in the reinsurance context. The underlying policy of the Connecticut prejudice requirement—which is to protect unsophisticated insureds—is not as strongly implicated in the reinsurance context where the reinsured is itself an insurance company. As an insurance company, the reinsured possesses superior knowledge and experience, and, therefore, does not need protection from technical notice provisions.

Accordingly, an interest analysis demonstrates that New York law shall govern this action. The Court will apply the New York rule which permits an insurer to disclaim coverage on late notice grounds even in the absence of prejudice.

## C. Notice of Loss Provisions in Reinsurance Contracts

 Travelers has not cited, and the Court has not found, any significant New York authority that distinguishes reinsurance from primary insurance with respect to notice provisions.[4] Based on existing New York law in the context of primary insurance, the Court finds that there is no basis for a such a distinction.

New York courts treat compliance with a notice of loss provision in a primary insurance contract as a condition precedent to an insurer's liability under the policy. *See, e.g., Security Mut. Ins. Co.,* 31 N.Y.2d at 440, 293 N.E.2d at 78, 340 N.Y.S.2d at 905; *Eveready Ins. Co. v. Levine,* 145 A.D.2d 526, 528, 536 N.Y.S.2d 87, 88 (2d Dep't 1988); *Todd v. Bankers Life & Casualty Co.,* 135 A.D.2d 1066, 1067, 523 N.Y.S.2d 206, 207 (3d Dep't 1987); *see also Commercial Union Ins. Co. v. International Flavors & Fragrances, Inc.,* 822 F.2d 267, 271 (2d Cir.1987). Failure to satisfy the notice requirement relieves the insurer of its obligations regardless of whether the delay materially prejudices the insurer's ability to investigate the circumstances surrounding the occurrence. *Security Mut. Ins. Co.,* 31 N.Y.2d at 440, 293 N.E.2d at 78, 340 N.Y. S.2d at 905; *Reliance Ins. Co. v. Garsart Building Corp.,* 131 A.D.2d 828, 829, 517 N.Y.S.2d 189, 190 (2d Dep't), *appeal denied,* 70 N.Y.2d 610, 516 N.E.2d 1224, 522 N.Y.S.2d 111 (1987). However, an in-

---

**3.** As underwriting members of the New York Insurance Exchange ["NYIE"], the Fremont, Maiden Lane, Pan Atlantic, and South Place Certificates were issued by the NYIE's New York office and notice of loss had to be forwarded by O'Connor to the NYIE, which in turn forwarded notice to its members. Similarly, Republic's Certificates were issued on its behalf by the principal New York office of Pan Atlantic Group, Inc., the reinsurance manager which performed Republic's obligations under the Certificates. Lastly, as to Buffalo Re, there is insufficient evidence in the record to determine where its Certificates were issued.

**4.** By letter after the motion was *sub judice,* Travelers directed the Court's attention to *General Ins. Co. of Trieste & Venice v. Nutmeg Ins. Co. & Paul D. Barbour Co.,* Index No. 6213/85—001 (Sup.Ct. July 24, 1987), the only New York case cited by Travelers. While the Supreme Court found that a notice of loss provision in a reinsurance contract is not a condition precedent, the court's cursory analysis is unpersuasive. Moreover, it is noteworthy that the Supreme Court failed to cite any authority for its distinction between primary insurance and reinsurance with respect to notice and apparently has not been followed by any subsequent New York court.

sured's failure to give timely notice may be excused upon proof that the insured either lacked knowledge of the occurrence or had a good faith reasonable belief of nonliability. *See Security Mut. Ins. Co.,* 31 N.Y.2d at 441, 293 N.E.2d at 78–79, 340 N.Y.S.2d at 905–06; *Eveready Ins. Co.,* 145 A.D.2d at 528, 536 N.Y.S.2d at 88–89.

The New York rule treating notice as a condition precedent to liability on a primary insurance contract is based upon the insurer's need to adequately investigate the underlying facts of a claim while witnesses and facts are available for the purpose of defending the insured and maintaining accurate reserve funds. *See Commercial Union Ins. Co.,* 822 F.2d at 271; *Utica Mut. Ins. Co. v. Fireman's Fund Ins. Cos.,* 748 F.2d 118, 121 (2d Cir.1984). "Without timely notice an insurer may be deprived of the opportunity to investigate a claim and is rendered vulnerable to fraud." *Power Authority v. Westinghouse Elec. Corp.,* 117 A.D.2d 336, 339, 502 N.Y.S.2d 420, 422 (1st Dep't 1986). As a result of these policies, " '[t]he right of an insurer has been held to be so fundamental that the insurer need show no prejudice to be able to disclaim liability on this basis.' " *Id.* at 339, 502 N.Y.S.2d at 422 (quoting *Allstate Ins. Co. v. Furman,* 84 A.D.2d 29, 38, 445 N.Y.S.2d 236, 239 (2d Dep't 1981), *aff'd,* 58 N.Y.2d 613, 444 N.E.2d 996, 458 N.Y.S.2d 532 (1982)).

In general, reinsurance contracts differ from primary insurance contracts in that reinsurers rarely defend claims. As is customary, the reinsurance Certificates in the instant action provide that the primary insurer will undertake to investigate and defend all claims under the policy. However, the Reinsurers expressly reserved the right to associate with the full cooperation of Travelers in the defense of any claim, suit, or proceeding which may involve the reinsurance Certificates. The fact that reinsurers rarely defend in the same manner as primary insurers is not a meaningful distinction with respect to the interpretation of notice provisions. Any distinction between notice provisions in an insurance contract and reinsurance contract would be strained at best since in each instance the

prompt notice is designed to afford an insurance company the opportunity to participate in the defense of a claim on which it may ultimately be liable. The Court perceives no reason to deprive a reinsurer of its right to associate in the defense of claims simply because the reinsured is itself an insurance company. Therefore, as in the primary insurance context, notice from the primary insurer to its reinsurer is a condition precedent to the reinsurer's liability. *See Fortress Re, Inc. v. Central Nat'l Ins. Co.,* 766 F.2d 163, 165 (4th Cir. 1985) (applying North Carolina law); *Highlands Ins. Co. v. Employers' Surplus Ins. Co.,* 497 F.Supp. 169, 172 & n. 3 (E.D.La. 1980) (applying Texas and Massachusetts law); *Keehn v. Excess Ins. Co. of America,* 129 F.2d 503, 505 (7th Cir.1942) (applying Illinois law); *see also* J.A. Appleman & J. Appleman, *supra,* § 7692, at 522. *But see Security Mut. Casualty Co. v. Century Casualty Co.,* 531 F.2d 974, 978 (10th Cir.) (finding that a reinsurer's right to associate in the defense of claims does not warrant treatment of notice as a condition precedent to the reinsurer's liability under Colorado law), *cert. denied,* 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976).

The Court remains mindful that construction of ambiguous contractual terms as covenants rather than as conditions precedent is desirable because it avoids forfeiture. *See* G. Couch, *supra,* § 49:20, at 247–48. However, the New York rule treating notice as a condition precedent in the primary insurance context is unmistakably clear. The absence of a meaningful distinction between notice provisions in a contract of primary insurance and a contract of reinsurance precludes any departure from the well established New York rule governing notice in the primary insurance context.

### D. Timeliness of Travelers' Notice

In March 1984, representatives from Travelers, CSSC, and Koppers met to discuss the KMM claims. Travelers' Statement Pursuant to S.D.N.Y. Civil Rule 3(g), at ¶ 13, 86 Civ. 3368 (JMC) (S.D.N.Y. Sept. 26, 1988) ["Travelers' 3(g) Statement"].

**500**

Travelers was advised that approximately 210 product liability claims were pending against Koppers and that fourteen new claims per month were anticipated over the next ten years at a projected cost of $10,-000 to $500,000 per claim. Certain Defendants' 3(g) Statement, at ¶ 11. According to the Director of National Accounts and Casualty/Property Claims Division at Travelers, Travelers advised Koppers in late March or early April of 1984 that coverage may exist for the KMM claims on a single occurrence per policy year basis. *See* Deposition of Thomas S. Owens, at 540, 86 Civ. 3369 (JMC) (S.D.N.Y. May 18, 1988). Travelers does not dispute the existence of these coverage determinations, but characterizes them as preliminary in nature. Travelers' 3(g) Statement, at ¶¶ 14, 16. On June 18, 1984, the Koppers claim representative at Travelers determined that the KMM claims may involve the Reinsurers. *Id.* at ¶ 25. Approximately two and a half months thereafter, on June 24, 1984, Travelers notified O'Connor, the reinsurance intermediary, as to the nature of the KMM claims and directed O'Connor to notify the Reinsurers. *Id.* O'Connor forwarded the June 1984 notice to the Reinsurers in December 1984. *Id.* at ¶ 27.

Policy provisions that require "prompt notice," "notice as soon as practicable," or other similar expressions have been uniformly interpreted by New York courts to require that notice be given within a reasonable time under the circumstances. *See, e.g., Security Mut. Ins. Co.,* 31 N.Y.2d at 441, 293 N.E.2d at 79, 340 N.Y.S.2d at 906; *Deso v. London & Lancashire Indem. Co. of America,* 3 N.Y.2d 127, 129, 143 N.E.2d 889, 890, 164 N.Y.S.2d 689, 691 (1957); *Power Authority,* 117 A.D.2d at 339, 502 N.Y.S.2d at 422; *Jenkins v. Burgos,* 99 A.D.2d 217, 219–20, 472 N.Y.S.2d 373, 375 (1st Dep't 1984). The reasonableness of a particular insured's delay in providing notice is ordinarily a question of fact reserved for trial. *Deso,* 3 N.Y.2d at 129–30, 143 N.E.2d at 890, 164 N.Y.S.2d at 691; *Jenkins,* 99 A.D.2d at 220, 472 N.Y.S.2d at 375. In the absence of a reasonable excuse or mitigating factor for the delay, however, the timeliness of the insured's notice may be disposed of as a matter of law in advance of trial. *Power Authority,* 117 A.D.2d at 339–40, 502 N.Y.S.2d at 422; *Jenkins,* 99 A.D.2d at 220, 472 N.Y.S.2d at 375–76. It is noteworthy that even relatively short periods of delay repeatedly have been found to be unreasonable as a matter of law in the absence of a reasonable excuse or mitigating factor. *See Deso,* 3 N.Y.2d 127, 143 N.E.2d 889, 164 N.Y.S.2d 689 (51 days); *Rushing v. Commercial Casualty Ins. Co.* 251 N.Y. 302, 167 N.E. 450 (1929) (22 days); *Power Authority,* 117 A.D.2d 336, 502 N.Y.S.2d 420 (53 days).

Whether the June 22, 1984 notice from Travelers to O'connor was reasonable in light of the knowledge possessed by Travelers is typically a question of fact reserved for trial. However, under New York law, the critical question becomes whether Travelers has offered an excuse for the delay, as that would effectively preserve the issue of the reasonableness of the delay for trial. An insured's lack of knowledge of the occurrence or a good faith reasonable belief of nonliability constitutes an acceptable excuse for an insured's failure to provide timely notice. *See Security Mut. Ins. Co.,* 31 N.Y.2d at 441, 293 N.E.2d at 78–79, 340 N.Y.S.2d at 905–06; *Eveready Ins. Co.,* 145 A.D.2d at 528, 536 N.Y.S.2d at 88–89.

The only excuse for the delay offered by Travelers is that the notice provision was not triggered until June 18, 1984, when in its opinion it determined that the Reinsurers should be placed on notice. However, there is nothing in the relevant New York law or the notice provision in question that supports the application of such a subjective standard. While the notice provision does provide that Travelers must "reasonably believe" or "opine" that a claim is likely to involve reinsurance, that fact standing alone does not vest unfettered discretion in Travelers to determine when a claim is likely to involve the Reinsurers. Such a reading would effectively insulate Travelers from its contractual duty to provide timely notice, as it could

simply defend under an alleged failure to perceive the likelihood of a claim involving reinsurance. *Cf. Jefferson Ins. Co. v. Fortress Re, Inc.*, 616 F.Supp. 874, 878 (S.D.N.Y.1984) (notice provision that requires reinsured to give prompt notice of any occurrence which "appears" likely to involve reinsurance does not warrant the application of a subjective standard under North Carolina law). Moreover, the subjective standard is contrary to New York law, which mandates the use of an objective test to determine when notice should be given to the insurer. *See Commercial Union Ins. Co.*, 822 F.2d at 272; *Security Mut. Ins. Co.*, 31 N.Y.2d at 441, 293 N.E.2d at 79, 340 N.Y.S.2d at 906.

A review of the record reveals that Travelers not only fails to offer an acceptable excuse, but that Travelers had knowledge of the occurrence giving rise to the reinsurance claim. The Certificates reinsured Travelers for losses in excess of $500,000 *per occurrence.* However, Travelers was aware that no single KMM claim exceeded $500,000, and, therefore, the reinsurance would not appear to be invaded if each claim were deemed a separate occurrence. Thus, when Travelers advised Koppers in late March or early April of 1984 of the likelihood of coverage for the KMM claims on a single occurrence per policy year basis, it *created* the facts which took the Reinsurers from a no loss position to a potential loss position. Therefore, based on Travelers' knowledge in late March or early April of 1984, it is not possible for Travelers to assert lack of knowledge of the occurrence or a good faith belief of nonliability. The fact that Travelers' characterizes its coverage determinations as preliminary in nature is immaterial. Pursuant to the notice of loss provision, Travelers is obligated to promptly notify the Reinsurers of any development that "might result in a claim" against the Reinsurers. Thus, Travelers need not have determined that coverage in fact existed for the KMM claims.

There is no genuine issue as to any material fact precluding the entry of summary judgment. Viewing the record most favorably to Travelers, it is undisputed that Travelers knew in late March or early April of the occurrence that might result in a claim against the Reinsurers, but withheld notice for over two months. In the absence of an acceptable excuse for Travelers' delay in providing notice to O'Connor, the Court finds the unexcused delay to be unreasonable as a matter of law.[5]

Accordingly, the Reinsurers motion for summary judgment based on Travelers' failure to provide timely notice is granted.

## CONCLUSION

Defendants' motion for summary judgment is granted. Fed.R.Civ.P. 56. Plaintiff's motion for leave to file a sur-reply memorandum in further opposition to defendants' motion for summary judgment is denied. Defendants' cross-motion to strike plaintiff's sur-reply memorandum as improperly submitted is granted. Defendants' request for costs and attorneys' fees in connection with the cross-motion is denied.

The Clerk of the Court is directed to enter judgment for defendants and to dismiss the complaint.

SO ORDERED.

---

**5.** The parties vigorously dispute whether notice to O'Connor on June 22, 1984 constitutes notice to the Reinsurers and on whose behalf O'Connor functioned as an agent. This raises questions of fact as to whether O'Connor was under the control of Travelers or the Reinsurers. However, such questions of fact are clearly immaterial and, therefore, do not preclude the entry of summary judgment. Even assuming notice to O'Connor constitutes notice to the Reinsurers under traditional principles of agency, Travelers' unexcused delay in providing notice is nevertheless unreasonable as a matter of law.

For these reasons, the Court also need not consider the excuses offered by Travelers for the six month delay before O'Connor forwarded the June 1984 notice to the Reinsurers in December 1984.