79 N.Y.2d 576 (1992)
Unigard Security Insurance Company, Inc., as Successor to Unigard Mutual Insurance Company, Inc., Plaintiff,
v.
North River Insurance Company, Defendant.
Court of Appeals of the State of New York.
Argued March 31, 1992.
Decided May 5, 1992.
Eugene Wollan, Michael H. Goldstein and Robert A. Stern for plaintiff.
Dennis G. Jacobs, Andrew S. Amer and Mary Beth Forshaw for defendant.
Marchisello & Doody for Superintendent of Insurance of the State of New York, amicus curiae.
Chief Judge WACHTLER and Judges TITONE, BELLACOSA and YESAWICH, JR.,[*] concur; Judges SIMONS and KAYE taking no part.
*578 HANCOCK, JR., J.
Under New York law, the standard provision in a contract of primary liability insurance requiring the insured to give the insurer prompt notice of a potential claim operates as a condition precedent; thus, for failure to give notice, the primary insurer "need not show prejudice before it can assert the defense of noncompliance" (Security Mut. Ins. Co. v Acker-Fitzsimons Corp., 31 N.Y.2d 436, 440). For reasons which follow, we hold that this "no prejudice" rule does not apply to a failure to comply with the prompt notice requirement in a contract of reinsurance.

I.
This appeal, pursuant to section 500.17 of this Court's Rules of Practice (22 NYCRR), certifies to us the central legal issue in a declaratory judgment action commenced in the United States District Court for the Southern District of New York by Unigard Security Insurance Company, Inc. (Unigard) against North River Insurance Company (North River). The question is whether Unigard must honor its commitment under a *579 facultative reinsurance certificate[1] issued to North River covering a high layer excess insurance policy issued by North River to Owens-Corning Fiberglass Corp. (Owens-Corning) (see, Unigard Sec. Ins. Co. v North Riv. Ins. Co., 762 F Supp 566 [SD NY, Sweet, J.]).
Unigard contends that it is automatically relieved from its obligations under the reinsurance certificate because North River failed to give prompt notice of an "occurrence or accident which appear[ed] likely to involve [the] reinsurance" as required by clause C of the certificate. Any question of prejudice, it argues, is irrelevant. North River has filed a counterclaim seeking damages and a declaration that Unigard is obligated to pay under the certificate. North River maintains that before a reinsurer may avoid its responsibility on account of late notice, it must show that it has suffered prejudice and that, since concededly no prejudice has been shown, Unigard's defense of late notice must fail.
The North River policy  for which Unigard issued its certificate of reinsurance  provided $30 million in excess liability insurance for two successive policy periods for amounts recovered against Owens-Corning over $76 million of underlying primary and lower level excess policies provided by various insurers. Under its certificate, Unigard agreed "to reinsure" North River in respect to these policies "subject to the terms, conditions, limits of liability, and Certificate provisions set forth". The terms and provisions include the following:
"C. Prompt notice shall be given by the company to the Underwriting Managers on behalf of the Reinsurers of any occurrence or accident which appears likely to involve this reinsurance and while the Underwriting Managers or the Reinsurers do not undertake to investigate or defend claims or suits, the Underwriting Managers directly, or through its representatives and/or counsel, shall nevertheless have the right and be given the opportunity to associate with the Company and its representatives at the Reinsurers' expense in the defense and control of any claim, suit or *580 proceeding which may involve this reinsurance with the full cooperation of the Company."
Unigard, as the agreed payment for its reinsurance commitment, became entitled to receive one sixth of the premium paid to North River, less the standard 25% brokerage commission.
The dispute over the Unigard reinsurance coverage stemmed from the asbestos claim crisis which began in the early 1980's and resulted in hundreds of claims against various asbestos products manufacturers including Owens-Corning. On April 1, 1987, North River became aware that its excess policies were being penetrated and that there was a likelihood that the Unigard reinsurance would be involved. In August 1987, North River sent a precautionary notice to Unigard advising it of potential asbestos-related losses under its excess policies. Unigard did not receive this notice until September 2, 1987.
The District Court, after a nine-day bench trial, found: (1) that North River's obligation to send a notice to Unigard arose in April 1987; and (2) that, under an objective standard, the notice sent in August and received on September 2, 1987 was untimely. It rejected Unigard's late notice defense, however, holding that New York law required a reinsurer to demonstrate prejudice. Because there was no showing of prejudice, the Court rendered judgment in favor of North River (762 F Supp 566, supra).
On appeal to the Second Circuit Court of Appeals, that court determined: (1) that the only New York decision on the issue of whether a reinsurer is required to demonstrate prejudice is an unpublished opinion (General Ins. Co. v Nutmeg Ins. Co., Sup Ct, NY County, July 24, 1987, Shainswit, J.); and (2) that there is a split of authority on the issue within the Southern District of New York (compare, Christiana Gen. Ins. Corp. v Great Am. Ins. Co., 745 F Supp 150 [SD NY 1990] [holding that reinsurer must demonstrate prejudice to prevail on late-notice defense], appeal pending ___ F2d ___ [2d Cir, Sept. 23, 1991, No. 91-7912], with Travelers Ins. Co. v Buffalo Reinsurance Co., 735 F Supp 492 [reinsurer need not prove prejudice], vacated in part 739 F Supp 209 [SD NY 1990]).
The Second Circuit noted that the "determination of the legal requirements for the assertion of a late-notice claim in the reinsurance context is important to purchasers and sellers of reinsurance issued in New York and to the reinsurance *581 industry" (949 F.2d 630, 632). Accordingly, it certified to us the following question:
"Must a reinsurer prove prejudice before it can successfully invoke the defense of late notice of loss by the reinsured?" (Id., at 632.)
We answer the question in the affirmative.

II.
It is settled New York law that the notice provision for a primary insurer operates as a condition precedent and that the insurer need not show prejudice to rely on the defense of late notice (see, Security Mut. Ins. Co. v Acker-Fitzsimons Corp., 31 N.Y.2d 436, 440, supra). The question is whether this same rule should be applied in the context of reinsurance. The New York "no prejudice" rule for primary insurers  as remarked by the District Court herein (Unigard Sec. Ins. Co. v North Riv. Ins. Co., supra, at 592)  is a limited exception to two established rules of contract law: (1) that ordinarily one seeking to escape the obligation to perform under a contract must demonstrate a material breach or prejudice (see, Restoration Realty Corp. v Robero, 58 N.Y.2d 1089, 1091; J. N. A. Realty Corp. v Cross Bay Chelsea, 42 N.Y.2d 392, 395; American Power Indus. v Rebel Realty Corp., 145 AD2d 454, 455; Insurance Co. v Associated Intl. Ins. Co., 922 F.2d 516, 523 [9th Cir 1991]; Toyomenka Pac. Petroleum v Hess Oil Virgin Is. Corp., 771 F Supp 63, 68 [SD NY]; 11 Williston, Contracts § 1292, at 8 [3d ed]; Restatement [Second] of Contracts § 237 [1979]); and (2) that a contractual duty ordinarily will not be construed as a condition precedent absent clear language showing that the parties intended to make it a condition (see, Manning v Michaels, 149 AD2d 897, 898; F.H.R. Auto Sales v Scutti, 144 AD2d 956; Toyomenka Pac. Petroleum v Hess Oil Virgin Is. Corp., supra, at 68; Insurance Co. v Associated Intl. Ins. Co., supra, at 524; Security Mut. Cas. Co. v Century Cas. Co., 531 F.2d 974, 976; 22 NY Jur 2d, Contracts, §§ 234, 237).
Various reasons have been expressed for the New York exception as applied to primary insurers: i.e., that "the insurer [must have] an opportunity to protect itself" (Security Mut. Ins. Co. v Acker-Fitzsimons Corp., supra, at 440); that without timely notice, "an insurer may be deprived of the opportunity to investigate a claim and is rendered vulnerable to fraud" (Power Auth. v Westinghouse Elec. Corp., 117 AD2d 336, 339); and that late "notification may * * * prevent the *582 insurer from providing a sufficient reserve fund" (id., at 339; and see, Security Mut. Cas. Co. v Century Cas. Co., 531 F.2d 974, 978, supra [prompt notice permits the primary insurer to make an early estimate of potential exposure, to investigate the claim while witnesses and facts are available, and to take steps to prevent fraud]; Commercial Union Ins. Co. v International Flavors & Fragrances, 822 F.2d 267, 271 [2d Cir 1987] [early notice enables the insurer, inter alia, to exercise early control over the claim and enhances the possibility of settlement]).
The question posed to us by the Circuit Court may be restated thus: do the same reasons for adopting the "no prejudice" exception to the general rules of contract for primary insurers apply to reinsurers? We believe they do not. We address this question, it must be noted, under the specific prompt notice provision contained in clause C of the North River certificate (supra, at 579-580). There is nothing in this provision or elsewhere in the North River certificate indicating that the parties intended that the giving of notice should operate as a condition precedent (compare, Liberty Mut. Ins. Co. v Gibbs, 773 F.2d 15, 16-17 [1st Cir 1965] [where the certificate specifically provided that notice "is a condition precedent to any liability under this policy"]). If the ordinary rules of contract were applied, the prompt notice provision in the North River certificate would not be construed as a condition precedent.

III.
There are significant and basic differences between primary insurance and reinsurance. A certificate of reinsurance  unlike a contract of primary insurance  is not a contract under which the company agrees to indemnify the insured from losses up to a stated limit upon the happening of specified contingencies. A certificate of reinsurance is a contract between two insurance companies in which the reinsured company agrees to cede part of its risk to the reinsurer in return for a percentage of the premium. A reinsurance contract operates solely between the reinsurer and the ceding company. It confers no rights on the insured (see, 19 Couch, Insurance 2d § 80:1 [1983]). As we recently stated, a reinsurer's "only obligation is to indemnify the primary insurer" (Matter of Midland Ins. Co., 79 N.Y.2d 253, 258; see, Security Mut. Cas. Co. v Century Cas. Co., supra, at 977; 13A Appleman, Insurance Law and Practice § 7681 [1976]).
*583 These differences in the contractual undertakings of reinsurers and primary insurers have consequences of critical importance, as courts in other jurisdictions have found (see, e.g., Security Mut. Cas. Co. v Century Cas. Co., supra, at 978; Insurance Co. v Associated Intl. Ins. Co., 922 F.2d 516, 523-524, supra). A reinsurer is not responsible for providing a defense, for investigating the claim or for attempting to get control of the claim in order to effect an early settlement. Unlike a primary insurer, it may not be held liable to the insured for a breach of these duties. Settlements, as well as the investigation and defense of claims are the sole responsibility of the primary insurer; and settlements made by the primary insurer are, by express terms of the reinsurance certificate, binding on the reinsurer.[2] Thus, failure to give the required prompt notice is of substantially less significance for a reinsurer than for a primary insurer.
Moreover, the interests of a reinsurer and the ceding primary insurer with respect to a pending claim are generally identical. The "follow the fortunes" clause in most reinsurance agreements leaves reinsurers little room to dispute the reinsured's conduct of the case. In addition, the interests of both parties are furthered through the primary insurer's efficient investigation and defense of the claim and through the resolution of the claim on the best terms possible (see, Security Mut. Cas. Co. v Century Cas. Co., supra, at 978 [rejecting rule under Colorado law and noting that a reinsurer had "as much reason" as a primary insurer to see that claims "were properly investigated and defended" and that as between "the two insurers, there was little danger of fraud or imposition"]; Insurance Co. v Associated Intl. Ins. Co., supra, at 523-524). By contrast, the interests of a primary insurer and its insured may often be adverse. There may be disputes over cooperation or coverage or over claimed collusion on the part of the insured. These factors make prompt notice of the claim and expeditious processing and control of it a matter of vital concern to the primary insurer. Such considerations have greatly diminished application to the reinsurer.
Unigard asserts, however, that a reinsurer's "right to associate"[3] *584 with the ceding insurance company makes it necessary for the reinsurer to have prompt notification of any claim likely to involve the reinsurance. The "right to associate" involves the right to consult with and advise the reinsured in its handling of a claim. Unigard argues that this right gives it an interest similar to that of a primary insurer and that it, therefore, must have early notice so that it may itself investigate the claim and foreclose the possibility of fraud. We agree that there are cases in which the reinsurer's right to associate may be impaired by late notice from the reinsured. Nonetheless, because of the critical distinctions between a primary insurer's right to control the investigation and defense of a claim and a reinsurer's "right of association" with the ceding companies, we cannot agree with Unigard's contention that the risk of such impairment is sufficiently grave to warrant applying a presumption of prejudice. Accordingly, there is no sound reason to depart from the general contract law principle that a breach will excuse performance only if it is material or demonstrably prejudicial. Indeed, it has been noted that reinsurers seldom have occasion to exercise their right to associate (see, Christiana Gen. Ins. Corp. v Great Am. Ins. Co., 745 F Supp 150, 159, supra; Travelers Ins. Co. v Buffalo Reinsurance Co., 735 F Supp 492, 499, supra).
This is not to suggest that a reinsurer may never assert late notice as a ground for avoiding its obligations under a reinsurance contract. All we hold here is that the reinsurer must demonstrate how it was prejudicial and may not rely on the presumption of prejudice that applies in the late notice disputes between primary insurers and their insureds.
For the foregoing reasons, we conclude that the question certified should be answered in the affirmative.
Following certification of a question by the United States Court of Appeals for the Second Circuit and acceptance of the question by this Court pursuant to section 500.17 of the Rules of Practice of the New York State Court of Appeals (22 NYCRR 500.17), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified question answered in the affirmative.
NOTES
[1] As we recently noted (see, Matter of Midland Ins. Co., 79 N.Y.2d 253, 258), a facultative reinsurance contract is one issued to cover a particular risk. To be distinguished is treaty reinsurance which is obtained in advance of actual coverage and may cover any risk the primary insurer covers (see, 19 Couch, Insurance 2d § 80:3 [1983]).
[2] Clause D of the Facultative Reinsurance Certificate (the so-called "Follow the Fortunes" clause) in pertinent part reads: "All claims covered by this reinsurance when settled by the Company shall be binding on the Reinsurers, who shall be bound to pay their proportion of such settlements" (emphasis added).
[3] The "right to associate" in clause C of the Unigard Facultative Reinsurance Certificate is as follows:

"[W]hile the Underwriting Managers or the Reinsurers do not undertake to investigate or defend claims or suits, the Underwriting Managers directly, or through its representatives and/or counsel, shall nevertheless have the right and be given the opportunity to associate with the Company and its representatives at the Reinsurers' expense in the defense and control of any claim, suit or proceeding which may involve this reinsurance with the full cooperation of the Company."
[*] Designated pursuant to NY Constitution, article VI, § 2.