**LIBERTY MUTUAL INSURANCE COMPANY, Plaintiff, Appellant,**

v.

**Carol A. GIBBS, et al., Defendants, Appellees.**

**No. 85–1112.**

United States Court of Appeals, First Circuit.

Heard Aug. 7, 1985.

Decided Sept. 23, 1985.

Edward J. Barshak, Boston, Mass., with whom Natasha C. Lisman, Gregg S. Blackburn and Sugarman, Rogers, Barshak & Cohen, P.C., Boston, Mass., were on brief, for plaintiff, appellant.

Charles P. Reidy, III, Boston, Mass., with whom Alice A. Noble and Martin, Magnuson, McCarthy & Kenney, Boston, Mass., were on brief, for defendants, appellees.

Before CAMPBELL, Chief Judge, BOWNES and TORRUELLA, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

In this diversity action applying Massachusetts law, plaintiff-appellant Liberty Mutual Insurance Co. ("Liberty") appeals from a judgment entered on a jury verdict in the District Court of Massachusetts, holding defendants-appellees Carol A. Gibbs and a consortium of insurance underwriters (collectively, Lloyd's of London, here "Lloyd's") not liable to Liberty on a claim arising under a reinsurance contract. We affirm.

In the policy of reinsurance, Lloyd's agreed to indemnify Liberty for 80% of all payments Liberty became obligated to make in excess of $250,000 under a general liability policy that Liberty had issued to Boston Edison Co. The reinsurance contract provided in relevant part:

It is a condition precedent to any liability under this policy that

a. [Liberty] shall upon knowledge of any loss or losses which may give rise to a claim under this policy advise [Lloyd's] thereof as soon as reasonably possible.

Liberty's principal arguments on appeal are that the district court misconstrued the meaning of the claims cooperation clause, and erred in ruling that lack of prejudice is no defense to a denial of coverage for late notice.

On May 24, 1972, after colliding with another car, an automobile drove up on a sidewalk and struck a Boston Edison utility pole in Lexington, Massachusetts, causing the pole to fall and injure two pedestrians, one of whom was Arthur Bernier. Both victims initially sued the drivers of the two cars in state court, but in May of 1974, they made Boston Edison a party defendant. The ad damnum for Bernier's claim was $750,000. Liberty, whose attorney handled Boston Edison's defense, did not notify Lloyd's of Bernier's claim during the pre-trial and trial phases of the litigation. On December 22, 1977, the jury returned a verdict for Bernier against Boston Edison in the amount of $465,000 plus interest. By letter dated January 19, 1978, Liberty notified Lloyd's of the judgment, and requested indemnification under the reinsurance policy. On October 27, 1978, Lloyd's denied liability on the ground that Liberty's failure to provide prompt notice of the Bernier claim violated the terms of the claims cooperation clause. Liberty commenced this action in April of 1979.

## I.

The claims cooperation clause required Liberty, as a condition precedent to Lloyd's liability, to seasonably inform Lloyd's of "any loss or losses which may give rise to a claim" under the reinsurance policy. In its rulings and jury instructions, the district court construed this language as referring to any losses that presented a "reasonable possibility" of resulting in a claim under the reinsurance policy.

Liberty contends that that construction was erroneous. Instead, it believes the court should have defined the clause as referring only to any losses that presented a "reasonable likelihood" of resulting in a

claim under the reinsurance policy. Liberty argues that notice is less critical to a reinsurer than to a primary insurer, because the primary insurer normally bears the burden of promptly investigating the facts relating to the claim. *See, e.g., Security Mutual Casualty Co. v. Century Casualty Co.*, 531 F.2d 974, 978 (10th Cir.), *cert. denied*, 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976). Because the reinsurance contract did not expressly afford Lloyd's any right to investigate or defend primary claims, Liberty believes the claims cooperation clause was met by Lloyd's being told only of those losses that were reasonably *likely* to result in awards greater than $250,000, so that Lloyd's could adjust its reserves accordingly.

■ We sustain the district court's construction. We find the language of the claims cooperation clause to be unambiguous. The district court's construction comports literally with it. Losses which "may" give rise to a claim denote, we think, losses which present "a reasonable possibility," not merely a reasonable likelihood. Under Massachusetts law, "[w]here the wording of the contract is unambiguous, the contract must be enforced according to its terms." *Edmonds v. United States*, 642 F.2d 877, 881 (1st Cir.1981). We see no basis for rewriting the contract whether or not, as an original proposition, it could have been better written as Liberty now proposes.

Liberty also contends that the district court erred in instructing the jury that, in estimating a loss within the meaning of the claims cooperation clause, there was to be no reduction for settlement possibilities. Liberty acknowledges that it could have incurred a loss on its policy either by settlement or entry of a judgment, but argues that the facts in the Bernier case were such as to make it reasonable to believe "at all relevant times that it could settle the Bernier claim for an amount that would result in a loss [of less than $250,000]."

We are unpersuaded by this argument. The claims cooperation clause imposed a duty upon Liberty to alert Lloyd's seasonably concerning *"any* loss or losses which

*may give rise* to a claim" under the policy (emphasis added). The notice provision is devoid of any reference to estimates of settlement values, and we think the trial court was entitled to believe that the materiality of these was so marginal and potentially misleading as to warrant the instructions given. To preserve recourse against its reinsurer, Liberty had to notify Lloyd's of any loss as to which there was a reasonable possibility of its reaching reinsurance limits *regardless* of whether Liberty's claims people felt that the loss could likely be settled for a lesser sum. It is not contended there was insufficient evidence for the jury to find that the loss here was of such a nature. We think the lower court's instructions and rulings were correct.

## II.

■ Liberty contends that the district court erred in ruling that lack of prejudice to Lloyd's would be no defense to Lloyd's denial of coverage for late notice. Liberty argues that it was entitled to try to establish lack of prejudice under Mass.Gen.Laws Ann. ch. 175, § 112 (West Supp.1984–85), which provides in relevant part:

> The liability of any company under ... any ... policy insuring against liability for loss or damage on account of bodily injury or death, or for loss or damage resulting therefrom, ... shall become absolute whenever the loss or damage for which the insured is responsible occurs, and the satisfaction by the insured of a final judgment for such loss or damage shall not be a condition precedent to the right or duty of the company to make payment on account of said loss or damage.... An insurance company shall not deny insurance coverage to an insured because of failure of an insured to seasonably notify an insurance company of an occurrence, incident, claim or of a suit founded upon an occurrence, incident or claim, which may give rise to liability insured against unless the insurance company has been prejudiced thereby.

As an initial matter, it is doubtful whether section 112 was intended to apply to reinsurance contracts. Although the Massachusetts courts have yet to address the question, the Massachusetts Insurance Laws expressly provide that "the hazards under [reinsurance] contracts shall be deemed distinct in nature from the hazard insured." Mass.Gen.Laws Ann. ch. 175, § 2A (West 1972). Strictly speaking, the reinsurance contract between Liberty and Lloyd's can be considered a contract of indemnity, not a contract "insuring against liability ... on account of bodily injury or death" within the meaning of section 112. *See Friend Brothers, Inc. v. Seaboard Surety Co.*, 316 Mass. 639, 642, 56 N.E.2d 6, 8 (1944). This construction comports with the apparent purpose behind section 112, which is to protect lay policyholders from the hypertechnical application of notice requirements inserted in forms drafted by primary insurance carriers. *See Johnson Controls, Inc. v. Bowes*, 381 Mass. 278, 280–82, 409 N.E.2d 185, 187 (1980). That rationale would not extend to a situation like the present, involving two experienced insurance underwriters who bargained at arm's length. *Id.*

However, even if section 112 applies to reinsurance contracts, the relevant statutory language took effect too late to be controlling in the present case. Section 112 was amended to address the issue of prejudice in 1977. The amendment became effective on October 16, 1977, and has been interpreted as having prospective effect only. *Spooner v. General Accident & First Assurance Corp.*, 379 Mass. 377, 397 N.E.2d 1290 (1979). Liberty urges that, because its claim against Lloyd's on the reinsurance contract did not mature until December 22, 1977, when the jury in the Bernier case returned its verdict, it is covered by the amendment.

In our view, however, the controlling date is when the reinsured became obligated to give notice, not when the jury reached its verdict. *Cf. Fortress Re, Inc. v. Jefferson Insurance Co.*, 628 F.2d 860 (4th Cir.1980) (reinsured's duty of notice triggered upon notice of primary claim, not date primary claim was settled) (applying North Carolina law). Bernier sued Boston

Edison in May of 1974, and Liberty, which defended the claim, had access then or soon thereafter to the facts from which to determine, for notice purposes, whether or not the loss might give rise to a reinsurance claim. As Liberty's contractual duty thus arose well in advance of the trial, it may not rely upon a statutory amendment that was not effective until October, 1977, to abrogate that duty.

Liberty's final argument is that, at common law, lack of prejudice was relevant to determining whether an insured's notice was given within a reasonable time even prior to the 1977 amendment to section 112. The only Massachusetts case which Liberty cites in support of this proposition is *LaPointe v. Shelby Mutual Insurance Co.*, 361 Mass. 558, 565, 281 N.E.2d 253, 258 (1972), where, in concluding that an insured had given his primary insurer reasonable notice of a claim, the court added that it was "difficult to see" how the insurer had been prejudiced by one month's delayed notice, since the insurer had denied coverage under the policy and had refused to take over the defense of lawsuits brought against the insured.

We do not think that *LaPointe* provides firm support for Liberty's position. First, it is far from clear that the *LaPointe* court's *dictum* embraces the proposition that lack of prejudice is relevant to the question whether an insured furnished its insurer with reasonable notice. In adverting to the issue of prejudice, the court may simply have been making a passing observation rather than ruling on the relevancy of prejudice as a general proposition. Second, the facts of *LaPointe* bear little resemblance to the facts here. There, the insured, who was a layman, informed the insurer's agent of the accident within a day or two of its occurrence, but contrary to custom the agent failed to pass this information on to the insurer. It was not clear whether the insurance policy covered the type of claim at issue in *LaPointe*; nevertheless, approximately one month after the accident, the insured notified his insurer of the accident in writing. In the present case, despite the fact that Liberty was an experienced underwriter, it did not notify

Lloyd's of the Bernier accident until several weeks after the jury had returned a verdict over the $250,000 limit.

Last, although Liberty maintains that lack of prejudice was relevant to a determination of reasonable notice under Massachusetts common law as early as 1972, we think it significant that, when the Supreme Judicial Court expressly (but prospectively) embraced the common law rule advocated by Liberty in 1980, it indicated that its "reform of the notice requirement constitute[d] 'a drastic or radical incursion upon existing law.'" *Johnson Controls, Inc. v. Bowes*, 381 Mass. 278, 282–83, 409 N.E.2d 185, 188 (1980).

*Affirmed.*