**INSURANCE COMPANY OF the STATE OF PENNSYLVANIA, Plaintiff–Appellant,**

v.

**ASSOCIATED INTERNATIONAL INSURANCE COMPANY, Defendant–Appellee.**

No. 89–55639.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 12, 1990.

Decided Dec. 27, 1990.

As Amended Feb. 13, 1991.

---

Charles A. Lynberg, argued, R. Jeff Carlisle, and Lisa T. Mathies, on briefs, Lynberg & Watkins, Los Angeles, Cal., for plaintiff-appellant.

Mark W. Flory, Jennifer N. Pahre, Harrington, Foxx, Dubrow & Canter, Los Angeles, Cal., for defendant-appellee.

Before REINHARDT and HALL, Circuit Judges, and RE,[*] Chief Judge.

RE, Chief Judge:

In this diversity action for breach of contract and declaratory relief, plaintiff-appellant, Insurance Company of the State of Pennsylvania (ICP), appeals from a decision in favor of defendant-appellee, Associated International Insurance Company (Associated), entered in the United States District Court for the Central District of California after a trial without a jury.

In essence, ICP is seeking damages and a determination of its rights and liabilities under a reinsurance contract with Associated. ICP contends that Associated breached its duty to indemnify ICP under the reinsurance contract. Associated alleges that ICP did not comply with the notice provision of the reinsurance contract and that Associated was prejudiced by the noncompliance. Hence, Associated contends that, under California law, it is relieved of liability under the reinsurance contract. Associated also submits that, regardless of whether ICP breached the notice clause, the settlement for which ICP seeks to be indemnified is beyond the scope of the reinsurance contract.

The questions presented on this appeal are: (1) whether the district court erred in holding that the notice by ICP to Associated in 1987 was not timely under the notice provision in the reinsurance contract; (2) whether California decisional law, which requires a primary insurer to demonstrate actual and substantial prejudice in order to establish a late notice defense, applies to Associated, a reinsurer; (3) whether, having found a breach of the notice clause by ICP, the district court erred in finding actual and substantial prejudice; and (4) whether ICP's settlement with Fibreboard falls within the indemnity obligation of Associated under the reinsurance contract.

We hold that: (1) the district court did not err in finding that ICP breached the notice requirement in the reinsurance contract; (2) Associated, a reinsurer, must show actual and substantial prejudice to maintain a late notice defense against ICP,

[*] The Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

its reinsured; (3) the district court erred in concluding that Associated demonstrated actual and substantial prejudice; and (4) the settlement between ICP and Fibreboard is covered under the reinsurance contract between ICP and Associated. Accordingly, the judgment of the district court is reversed.

## BACKGROUND

In 1976, the Insurance Company for the State of Pennsylvania issued an excess umbrella liability insurance policy providing $20 million coverage to Louisiana–Pacific Corporation. ICP ceded to Associated International Insurance Company and Associated agreed to reinsure the ICP–Louisiana–Pacific policy up to $2.25 million. The certificate of reinsurance, i.e., the reinsurance contract between ICP and Associated, contained a notice provision requiring ICP to:

> notify [Associated] promptly of any occurrence which in [ICP]'s estimate of the value of injuries or damages sought, without regard to liability, might result in judgment in an amount sufficient to involve this certificate of reinsurance.

The reinsurance contract also required ICP to "notify [Associated] promptly … when notice of claim is received by [ICP]." The reinsurance contract specified that Associated had "the right and shall be given the opportunity, with the full cooperation of [ICP], to associate counsel at its own expense and to join with [ICP] and its representatives in the defense and control of any claim, suit or proceeding involving this certificate of reinsurance." It also provided that Associated must indemnify ICP if ICP pays a claim covered by the reinsured insurance policy.

In 1978, Louisiana–Pacific acquired the stock of Fibreboard Corporation, a company which, prior to 1972, manufactured products containing asbestos. Upon the acquisition, Fibreboard automatically became insured under the ICP–Louisiana–Pacific policy. Subsequently, Louisiana–Pacific's premiums were increased by ten percent. Shortly thereafter, Associated received a document from ICP indicating the additional premium collected, however, no mention was made of Louisiana–Pacific's acquisition of Fibreboard.

During the late 1970's thousands of personal injury claims arising from exposure to asbestos were brought against Fibreboard. As a result, in February 1979, a letter was sent to ICP from Louisiana–Pacific's insurance brokers informing ICP of the outstanding claims. The letter warned ICP of "an increasing possibility of eventual potential claims against policies issued by excess underwriters." A similar letter was sent in October, 1980. A third letter, dated December 18, 1980, explained to ICP that "due to the sheer number of claims involved, we believe and expect that your excess policies will be penetrated." ICP did not relate this information to Associated.

In May 1979, the Fireman's Fund Insurance Company, one of Fibreboard's primary insurers, commenced an action in the California state courts seeking declaratory relief against Fibreboard and several of Fibreboard's insurers to resolve a coverage dispute as to the asbestos claims. Fibreboard cross-claimed against all of its insurers, including ICP. The cross-complaint sought declaratory relief and compensatory and punitive damages for breach of contract, breach of the insurer's duty of good faith and fair dealing, and deceptive and unfair acts and practices. Specifically, the cross-complaint alleged "that the potential liability of Fibreboard in the underlying action exceeds Fibreboard's underlying primary and other insurance coverage." These developments were not conveyed to Associated.

In July 1986, Fibreboard notified ICP and other companies affiliated with ICP (AIG companies) of the forthcoming depletion of the layers of insurance below its excess policies for certain years, and requested payment on these policies. In late 1986, negotiations for a complete settlement were commenced during which Fibreboard and AIG companies, including ICP, agreed to include the policy reinsured by Associated.

In a document dated April 15, 1987, entitled "First Notice of Loss," ICP formally

informed Associated of the asbestos claims. In May 1987, Fibreboard and various AIG companies, including ICP, entered into a settlement agreement in which the insurers promised to pay $102.4 million in structured payments between May 15, 1987, and December 15, 1991. It was agreed that the funds paid in settlement would be used by Fibreboard to pay actual asbestos claims. It was also agreed that the $102.4 million in payments would be deemed to exhaust ICP's policy and the policies of the other AIG companies. Under this settlement, ICP was not required to pay out the full policy limit. Hence, ICP requested only $1.85 million of the $2.25 million reinsurance contract from Associated. In a letter dated June 19, 1987, Associated refused to comply with ICP's demand for payment stating that "[t]he recent late notice is in direct violation of the terms and conditions of our reinsurance certificate."

On May 6, 1988, asserting diversity jurisdiction, ICP sued Associated in the United States District Court for the Central District of California. The case proceeded to a bench trial and, on April 28, 1989, judgment was entered for Associated.

## DISCUSSION

### I. Standard of Review

Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous...." The Rule, however, does not apply to a district court's interpretation of law, which is reviewed de novo. *Pullman–Standard v. Swint,* 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982); *State Farm Fire and Casualty Co. v. Abraio,* 874 F.2d 619, 621 (9th Cir.1989). Furthermore, the district court's conclusions may be set aside if they are based upon an erroneous interpretation of the law. *Pullman–Standard,* 456 U.S. at 287, 102 S.Ct. at 1789.

Generally, the interpretation of a contract is considered a mixed question of law and fact. *James B. Lansing Sound, Inc. v. National Union Fire Ins. Co.,* 801 F.2d 1560, 1564 (9th Cir.1986). Hence, we re-

view de novo "[w]hen the district court's interpretation is based on an analysis of the contractual language and the principles of contract interpretation," and we review under a clearly erroneous standard "when the [district court's] interpretation focuses on extrinsic evidence of related facts...." *Lawyers Title Ins. Corp. v. Honolulu Fed. Sav. and Loan Ass'n,* 900 F.2d 159, 162 (9th Cir.1990).

■ In this case, the district court concluded that ICP breached the notice clause or requirement in the reinsurance contract, and that Associated was prejudiced. Since the district court's findings were based upon "an analysis of the contractual language" and its conclusions of California law, they are subject to de novo review. *Lansing Sound,* 801 F.2d at 1564.

### II. Applicable Law

In this diversity case governed by the substantive law of insurance of California, we are required to "ascertain from all the available data what the state law is and apply it...." *West v. American Telephone and Telegraph Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940). In the absence of a decision by the state's highest·court, "this court looks to decisions by intermediate appellate state courts for guidance." *State Farm,* 874 F.2d at 621. Indeed, state intermediate appellate court decisions are " 'not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.' " *Dimidowich v. Bell & Howell,* 803 F.2d 1473, 1482 (9th Cir.1986) (quoting *West,* 311 U.S. at 237, 61 S.Ct. at 183). It is understood that "well-reasoned decisions from other jurisdictions" may also be considered. *Takahashi v. Loomis Armored Car Serv.,* 625 F.2d 314, 316 (9th Cir.1980).

Careful research discloses no California Supreme Court case that has addressed the specific question of a notice provision in a reinsurance contract. Hence, we are, as was the district court, required to use our "own best judgment in predicting" how the Supreme Court of California would inter-

pret this reinsurance contract. *Takahashi,* 625 F.2d at 316.

## III. Notice Requirement

A reinsurance contract "is one by which an insurer procures a third person to insure him against loss or liability by reason of such original insurance." Cal.Ins.Code § 620 (West 1972). The language of an insurance contract, like any other contract, "is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal.Civ.Code § 1638 (West 1985).

In this case, the notice clause requires ICP to notify Associated "promptly of any occurrence which in [ICP]'s estimate ... might result in judgment in an amount sufficient to involve this certificate of reinsurance." ICP contends that "[t]he condition for giving this notice is the reinsured's (ICP's) subjective determination that the reinsurance certificate will be impacted by claims made against the original insured (Fibreboard) *or,* ... 'when notice of claim is received'" (emphasis in original). Hence, ICP contends that "[p]rompt notice of this type was provided to Associated once ICP was informed that [Fibreboard's] other available insurance limits were nearing exhaustion [in 1987]."

The Supreme Court of California, interpreting an insurance policy, defined the term "occurrence" as "'an accident ... which results, during the policy period, in bodily injury neither expected nor intended from the standpoint of the Insured.'" *Preston v. Goldman,* 42 Cal.3d 108, 119, 720 P.2d 476, 483, 227 Cal.Rptr. 817, 824 (1986) (quoting *Atlantic Mut. Ins. Co. v. Travelers Ins. Co.,* 147 Cal.App.3d 1054, 1056, 195 Cal.Rptr. 476, 477 (1983)). Significantly, we have interpreted the term as an "event upon which the liability of the appellant was predicated." *Upper Columbia River Towing Co. v. Maryland Casualty Co.,* 313 F.2d 702, 705 (9th Cir.1963).

ICP does not dispute that the cross-claim brought by Fibreboard against ICP was an "occurrence" under the reinsurance contract. ICP's contention as to the notice provision is founded on the premise that the contractual language, i.e., "in [ICP]'s estimate ... might result in judgment in an amount sufficient to involve this certificate of reinsurance," implies a "subjective determination" as to when to notify Associated of an "occurrence."

Although we agree with ICP's interpretation, ICP nonetheless has the obligation, implied by law, to perform its duty under the reinsurance contract "'with care, skill, reasonable expedience and faithfulness.'" *Kuitems v. Covell,* 104 Cal.App.2d 482, 485, 231 P.2d 552, 554 (1951) (quoting *Roscoe Moss Co. v. Jenkins,* 55 Cal.App.2d 369, 376, 130 P.2d 477, 481 (1942)). It is also noteworthy that insurance companies have been held to a higher standard of compliance with notice provisions. *See Ohio Casualty Ins. Co. v. Rynearson,* 507 F.2d 573, 577 (7th Cir.1974).

We consider the language of the ICP–Associated notice clause analogous to the notice clause between an insured and an excess insurer in the case of *Liberty Mut. Ins. Co. v. Gibbs,* 773 F.2d 15 (1st Cir.1985). In that case, the notice clause specified that the insured was required "to seasonably inform [Reinsurer] of 'any loss or losses which may give rise to a claim' under the reinsurance policy." *Id.* at 17. The court, applying Massachusetts law and sustaining the district court's interpretation, stated that the language "refer[s] to any losses that presented a 'reasonable possibility' of resulting in a claim under the reinsurance policy." *Id.*

A similar notice provision is found in a reinsurance contract case decided by the United States Court of Appeals for the Third Circuit. In *Trustees of the University of Pennsylvania v. Lexington Insurance Co.,* 815 F.2d 890 (3d Cir.1987), "[t]he policy required notice whenever the Insured had information from which it might 'reasonably conclude' that an occurrence was 'likely to involve' the policy." *Id.* at 896. The court, in interpreting that notice provision, stated that, under Pennsylvania law, the insured "had the obligation to notify whenever reasonable judgment, based on the information available to [Insured], suggested that the claim was likely to in-

volve [Insurer]." *Id.* The court also stated that the insured may have an "obligation to notify despite many reasonable doubts that the claim would actually involve [Insurer]'s coverage." *Id. See also Compagnie des Bauxites de Guinee v. Argonaut–Midwest Ins. Co.,* 880 F.2d 685, 692 (3d Cir.1989) ("[u]nder Illinois law, 'the time within which notice is required is determined by a standard of reasonableness' " (quoting *Fletcher v. Palos Community Consol. School Dist. No. 118,* 164 Ill.App.3d 921, 926, 115 Ill.Dec. 838, 842, 518 N.E.2d 363, 367 (1987))).

■ In light of the foregoing, we conclude that the cross-claim brought by Fibreboard against ICP was an occurrence "that presented a 'reasonable possibility' of resulting in a claim under the reinsurance policy." *Gibbs,* 773 F.2d at 17. Hence, if ICP had acted with the "care, skill ... and faithfulness" required under California law, it would have realized that the cross-claim "might result in judgment in an amount sufficient to involve this certificate of reinsurance." As a consequence of ICP's failure to act with "reasonable expedience," ICP breached the notice clause in the reinsurance contract.

■ Additionally, the reinsurance contract required ICP to give notice to Associated "when notice of claim is received by [ICP]." Relying on this provision, Associated contends that ICP must give "notice of all claims as they are received, if there is even the merest possibility that the Associated certificate may be implicated." Associated, in part, relies on section 622 of the California Insurance Code which states that "[w]here an insurer obtains reinsurance, he must communicate all the representations of the original insured, and also all the knowledge and information he possesses, whether previously or subsequently acquired, which are material to the risk." Associated also notes that the contract gives it the right "to join with [ICP] ... in the defense and control of any claim, suit or proceeding involving this certificate of reinsurance."

The California Civil Code sets forth the fundamental principle that "[t]he whole of

a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Cal.Civ.Code § 1641 (West 1985). In this case, the notice provision of the contract uses the term "claim" twice. First, the notice provision states that ICP is required to notify Associated "when notice of claim is received." Secondly, the contract states that Associated may join "in the defense ... of any claim, suit or proceeding involving this certificate of reinsurance." The language of the contract makes it clear that the more general term "claim," in the provision requiring notice when a claim is received, encompasses the more specific terms "claim, suit or proceeding" in the provision allowing Associated to join in the defense. Indeed, California courts have broadly defined the term "claim" as an " 'assertion, demand or challenge of something as a right; the assertion of a liability to the party making it to do some service or pay a sum of money....' " *Williamson & Vollmer Eng'g, Inc. v. Sequoia Ins. Co.,* 64 Cal.App.3d 261, 269, 134 Cal.Rptr. 427, 431 (1976) (quoting *San Pedro Properties, Inc. v. Sayre & Toso, Inc.,* 203 Cal.App.2d 750, 755, 21 Cal. Rptr. 844, 847 (1962)); *see Mt. Hawley Ins. Co. v. Federal Sav. & Loan Ins. Corp.,* 695 F.Supp. 469, 479 (C.D.Cal.1987).

It is also important to note that the right of Associated to join in the defense would be sharply curtailed if Associated was only entitled to notice, as ICP contends, upon ICP's "subjective determination that the reinsurance certificate would be impacted." Therefore, under California law, Fibreboard's cross-claim against ICP is a "claim" within the ICP–Associated reinsurance contract. Hence, ICP's failure to notify Associated of the "claim," also constituted a breach of the notice clause.

In sum, interpreting the reinsurance contract as would the Supreme Court of California, we conclude that the cross-claim brought against ICP by Fibreboard was both an "occurrence," and a "claim." Hence, since under the notice provision ICP was required to notify Associated, ICP

breached the notice provision in the contract.

## IV. Notice–Prejudice Rule

Under California decisional law, it is settled that an insurer, in order to avoid liability on the basis of a breach of the notice clause, must establish actual and substantial prejudice. *Campbell v. Allstate Ins. Co.*, 60 Cal.2d 303, 305–06, 384 P.2d 155, 156–57, 32 Cal.Rptr. 827, 828–29 (1963); *see Clemmer v. Hartford Ins. Co.*, 22 Cal.3d 865, 882, 587 P.2d 1098, 1107, 151 Cal.Rptr. 285, 294 (1978). Whether this "notice-prejudice rule," *Pacific Employers Ins. Co. v. Superior Court*, 221 Cal.App.3d 1348, 1357, 270 Cal.Rptr. 779, 783 (1990), applies to a reinsurer is an issue of first impression in the state of California.

ICP contends that the notice-prejudice rule "in the direct insurer context should apply with equal force [in] the reinsurer context" since "[t]he notice requirement serves to protect insurers from prejudice, ... not ... to shield them from their contractual obligations." It would seem clear that the purpose of the notice clause is to " 'protect the insurance company from being placed in a substantially less favorable position than it would have been if timely notice had been provided.' " *Lexington*, 815 F.2d at 897 (quoting *Brakeman v. Potomac Ins. Co.*, 472 Pa. 66, 75, 371 A.2d 193, 197 (1977)). The purpose is "not to provide a technical escape-hatch by which to deny coverage in the absence of prejudice nor to evade the fundamental protective purpose of the insurance contract to assure the insured and the general public that liability claims will be paid...." *Miller v. Marcantel*, 221 So.2d 557, 559 (La.Ct. App.1969). Hence, it has been stated that when the late notice does not prejudice the insurer "the reason behind the notice condition in the policy is lacking, and it follows neither logic nor fairness to relieve the insurance company of its obligations under the policy in such a situation." *Lexington*, 815 F.2d at 897–98 (quoting *Brakeman*, 472 Pa. at 75, 371 A.2d at 197).

It would also seem clear that the rationale underlying the notice-prejudice rule in contracts of direct insurance is equally applicable in the context of reinsurance contracts. Indeed, in a discussion of this question, the Court of Appeals for the Third Circuit reasoned that:

> the excess insurance context presents an even more compelling reason to require prejudice. Unlike primary insurers, excess insurers have no right to control a lawsuit and thus have less need for early notice. Moreover, because primary insurers will usually provide an experienced defense, the likelihood of prejudice from late notice is more remote.

*Lexington*, 815 F.2d at 898.

The recent case of *Christiana Gen. Ins. Corp. v. Great Am. Ins. Co.*, 745 F.Supp. 150 (S.D.N.Y.1990), is instructive and noteworthy. In that diversity case, the District Court for the Southern District of New York concluded that, under New York law, a reinsurer must show prejudice from the late notice in order to avoid liability under a reinsurance contract.

■ Under New York law, a primary insurer does not have to show that it was prejudiced by the late notice in order to avoid liability on an insurance contract. 745 F.Supp. at 157–58. The court stated that "the issues in reinsurance were sufficiently distinguishable from those in primary insurance to justify a different notice rule...." *Id.* at 158. The court further stated that:

> The policy considerations underlying New York's rule that a primary insurer need not demonstrate prejudice when an insured breaches a notice provision are not present in a reinsurance contract. Reinsurers have no duty to defend claims, nor is the potential staleness of claim as significant a concern to a reinsurer as it is to a primary insurer.

*Id.* at 159.

■ Associated, without citing any authority, asserts that "[t]here is authority which suggests that prejudice is irrelevant in the reinsurance context." It is obvious that, in order to disregard the prejudice requirement, the notice provision must be construed as a condition precedent. Research, however, indicates that, absent a clear and unambiguous expression by the

parties to a reinsurance contract that they intended the notice provision to be a condition precedent, the provision will not be construed as a condition precedent. *See, e.g., Gibbs,* 773 F.2d at 16–17. In the absence of clarity, " 'stipulations for notice will not be construed as conditions precedent if reasonably open to other construction.' " *Security Mut. Casualty Co. v. Century Casualty Co.,* 531 F.2d 974, 976 (10th Cir.) (quoting G. Couch, *Cyclopedia of Insurance Law* § 49:20 (2d ed. 1982)), *cert. denied,* 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976). Furthermore, under California law, contractual provisions are not deemed to be conditions precedent unless stated "in conspicuous, unambiguous, and unequivocal language...." *Thompson v. Occidental Life Ins. Co. of California,* 9 Cal.3d 904, 912, 513 P.2d 353, 357, 109 Cal.Rptr. 473, 477 (1973); *see Sosin v. Richardson,* 210 Cal.App.2d 258, 264, 26 Cal.Rptr. 610, 613 (1962). It is also noteworthy that California courts have held that even if the notice provision is made a condition precedent to the liability of the insurer, the insurer must still prove prejudice in order to avoid liability based upon the insured's breach of the notice requirement. *See Hanover Ins. Co. v. Carroll,* 241 Cal.App.2d 558, 565, 50 Cal.Rptr. 704, 709 (1966).

■ In view of the substantive law of California, and noting California's strong public policy against "technical forfeitures," *Bollinger v. National Fire Ins. Co.,* 25 Cal.2d 399, 405, 154 P.2d 399, 403 (1944), we conclude that the Supreme Court of California would interpret the notice provision in accordance with its purpose, and would apply the notice-prejudice rule to contracts of reinsurance. The question presented, therefore, is whether Associated was prejudiced by ICP's breach of the notice provision.

## V. Was Associated Prejudiced by the Breach?

■ We note at the outset that courts in some jurisdictions presume prejudice in cases of late notice. *See, e.g., Tiedtke v. Fidelity & Casualty Co.,* 222 So.2d 206, 209 (Fla.1969). In California, however, there is no presumption of prejudice. Under California law, the insurer has the burden of proving actual and substantial prejudice, and a "mere possibility" of prejudice will not suffice. *Moe v. Transamerica Title Ins. Co.,* 21 Cal.App.3d 289, 302, 98 Cal.Rptr. 547, 555 (1971); *see Campbell,* 60 Cal.2d at 305–07, 384 P.2d at 156–57, 32 Cal.Rptr. at 828–29.

■ Although no categorical definition of prejudice has been found, it is not disputed that California case law "place[s] a heavy burden on an insurer seeking to defend on the ground of breach of the notice clause." *Colonial Gas Energy Sys. v. Unigard Mut. Ins. Co.,* 441 F.Supp. 765, 769 (N.D.Cal.1977). Indeed, prejudice is not established merely because the late notice prevented the insurer from "contemporaneously investigat[ing] the claim," nor does it arise from the mere "denial of the opportunity to make an early settlement of the claim." *Northwestern Title Sec. Co. v. Flack,* 6 Cal.App.3d 134, 142–43, 85 Cal.Rptr. 693, 697 (1970). Furthermore, it is not sufficient for the insurer simply to "display[ ] end results; the probability that such results could or would have been avoided absent the claimed default or error must also be explored." *Clemmer,* 22 Cal.3d at 883 n. 12, 587 P.2d at 1108, 151 Cal.Rptr. at 295. Thus, under California case law, the only prejudice sufficient to allow an insurer to avoid liability based on late notice is found in those cases where the insurer actually demonstrated that there was a substantial likelihood that it could have either defeated the underlying claim against its insured, or settled the case for a smaller sum than that for which its insured ultimately settled the claim. *See Northwestern,* 6 Cal.App.3d at 143, 85 Cal.Rptr. at 698; *see also Lexington,* 815 F.2d at 899.

In this case, Associated contends that the evidence of record supports the district court's "findings of fact" that Associated was prejudiced in three ways. First, by the fact that the late notice deprived it of the opportunity to investigate the Fibreboard cross-claim and participate in the set-

tlement negotiations. Second, because of its "inability to establish a reserve earlier and thereby obtain a tax deduction" under earlier tax laws. Lastly, by the fact that Associated was unable to assert a claim for its own reinsurance, because its reinsurer, Mission Insurance Company, went bankrupt in 1985.

The district court, however, in its Findings of Fact and Conclusions of Law concluded that Associated was prejudiced in the following three ways: (1) by "the fact that a commitment was made by [ICP] committing [Associated's] funds to funding [the ICP–Fibreboard] settlement;" (2) by the fact that Associated was "deprived of any opportunity to take any evasive action of any kind to protect themselves against [the] loss;" and (3) because Associated was "not given the opportunity, until it was too late ... to join with [ICP] and its representatives in the defense and control of any claim, suit or proceeding involving the certificate of reinsurance." The district court further stated that "it's basically prejudicial to be denied ... notice of what is going on...."

■ It seems clear that the district court, in accord with Associated's first contention, improperly presumed prejudice because Associated was deprived of the opportunity to "join" and "control" the underlying claim. It also seems clear that, pursuant to Associated's second and third contentions, the district court improperly presumed prejudice because Associated was unable to take "evasive action" to protect itself against the loss. The court, in specifically addressing Associated's second and third allegations of prejudice, declared that "in terms of the evidence presented regarding the Mission Insurance Company, I suppose that could be considered prejudice as well.... The question of whether establishing a reserve would have enabled [Associated] at an earlier time to claim a tax deduction is a prejudice, but ... *these things are all very difficult to say after the fact what prejudice there would have been*" (emphasis added). Regardless, Associated has cited no case, and we have found none, to support the proposition that

such collateral matters may constitute prejudice so as to relieve an insurer from its liability under an insurance contract.

It is noteworthy that there is authority that allows an insurer to collect money damages to the extent that they were proximately caused by the late notice. *See Security*, 531 F.2d at 978. Indeed, it has been stated that such a "construction of the contract does not deny the reinsurer the protection it needs, and it does give the reinsured the security and returns for which it paid." *Id.* It is not necessary, however, for this court to decide this question since, based on the record, there is no factual basis for concluding that Associated suffered the alleged collateral losses, or that, had they been sustained, they would have resulted from the delayed notice.

In summary, the district court erred in invoking a presumption of prejudice. The court did not find, nor did Associated allege, the actual and substantial prejudice necessary under California law to relieve Associated of its contractual liability. Furthermore, there is no evidence upon which to conclude, under California law, that Associated was prejudiced by ICP's late notice.

## VI. The Settlement Agreement

■ Associated maintains that the settlement agreement called for the payment of "future, unidentified claims" and is not covered by the reinsurance certificate because "payment is required only for funds actually expended to injured claimants by way of settlement or judgment." Associated also claims that the settlement is beyond the scope of the certificate since ICP entered into the settlement "to extricate itself from a bad faith lawsuit by its own insured...." Associated makes these contentions despite the fact that the Pre–Trial Conference Order, which was stipulated by both parties, stated that "the funds paid in settlement ... would be used for payment by Fibreboard of actual asbestos claims made against Fibreboard."

It is basic that "[w]hile uncertainties and ambiguities are to be construed against the insurer, this does not mean that courts are authorized to put a strained and unnatural

**526**

construction on terms of the policy in order to create an uncertainty or ambiguity." *Cobb v. Home and Auto. Ins. Co.*, 86 Cal. App.3d 673, 679, 150 Cal.Rptr. 370, 374 (1978). In this case, the operative language of the settlement agreement, the reinsurance contract and the insurance policy is clear and unambiguous. Specifically, the ICP–Fibreboard settlement agreement requires ICP to pay asbestos claims "as and if such claims arise." Pursuant to the reinsurance contract, Associated's liability "shall follow that of [ICP] and shall be subject in all respects to all the terms and conditions of the [ICP–Fibreboard] policy...." Under the ICP–Fibreboard policy, ICP is required "to indemnify [Fibreboard] for all sums which [Fibreboard] shall be obligated to pay by reason of the liability...." Therefore, since the asbestos claims represent a liability against Fibreboard which it is obligated to pay, ICP must indemnify Fibreboard, and, pursuant to the reinsurance contract, Associated is required to indemnify ICP.

On this question, we recognize California's policy against implying provisions in insurance contracts that would defeat the contractual purpose. To hold that settlements between an insured and insurer which address future claims are not reimbursable by reinsurance pursuant to an indemnification contract would be contrary to that policy. Moreover, to decide in favor of Associated would frustrate the public policy which encourages settlement.

### CONCLUSION

We hold that, although ICP breached the notice provision in the ICP–Associated reinsurance contract, Associated did not demonstrate the substantial prejudice required under California law to be relieved of its obligation under the contract. We also hold that the settlement agreement for which ICP sought indemnity is covered by the reinsurance contract. Accordingly, the judgment of the district court is reversed.

REVERSED.