

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-16-2007

# Natl Union Fire Ins v. Gen Star Indemnity

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3392

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

## Recommended Citation

"Natl Union Fire Ins v. Gen Star Indemnity" (2007). *2007 Decisions.* Paper 1608.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1608

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

<u>**NOT PRECEDENTIAL**</u>

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-3392
_____

NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PA,

Appellant,

v.

GENERAL STAR INDEMNITY COMPANY.

_____

On Appeal From the United States District Court
for the Eastern District of Pennsylvania
(No. 04-cv-01065)
Senior District Judge:  Honorable John P. Fullam

Argued:  December 14, 2006

Before: FISHER, CHAGARES and GREENBERG, *Circuit Judges*.

(Filed:  February 16, 2007)
_____

Jeffrey R. Lerman, Esq. (Argued)
Glenn F. Rosenblum, Esq.
Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA 19109

<u>Counsel for Appellant</u>

Alan H. Barbanel, Esq. (Argued)

Barbanel & Treuer
1925 Century Park East
Suite 350
Los Angeles, CA 90067

William H. Black, Jr., Esq.
M. Jane Goode, Esq.
Gibbons, Del Deo, Dolan, Griffinger & Vecchione, P.C.
1700 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103

Counsel for Appellee

OPINION OF THE COURT

_____

CHAGARES, *Circuit Judge*.

This appeal arises out of a dispute between two insurance companies over an excess liability insurance policy issued by appellee General Star Indemnity Company ("General Star") to ATI Systems International, Inc. ("ATI"). The General Star policy provided coverage above and beyond ATI's self-insured retention and the primary insurance policy of appellant, National Union Fire Insurance Company of Pittsburgh, PA ("National"). General Star disclaimed coverage based on lack of notice of the underlying suit. After paying the judgment in full, National filed this action for indemnification alleging wrongful repudiation of its payment obligations. National appeals from an order of the District Court granting summary judgment in favor of General Star.

2

For the reasons expressed below, we will affirm.

I.

We recite only those facts necessary to decide this appeal.

The genesis of this action is a lawsuit for personal injuries stemming from a collision between an armored truck owned and operated by Brooks Armored Car Service ("Brooks"), an affiliate of ATI, and a bicyclist, Christine Bennyhoff ("Bennyhoff"). Bennyhoff filed suit against Brooks and its driver. The defense of the underlying action was initially directed by Constitution States Services Company ("CSSC"), a third-party claim administrator, pursuant to a Claims Service Agreement between CSSC and National.

At the time of the accident, Brooks was insured under a policy of primary liability insurance issued to ATI by National. The National policy provided $1 million in primary insurance limits, subject to a $250,000 self-insured retention. General Star provided excess liability insurance to ATI of $10 million, above the total $1,250,000 limits of ATI's deductible and National's primary policy.

The General Star excess policy at issue explicitly required that General Star be given written notice of occurrences likely to involve its policy and also required that suit papers relating to any claim be forwarded to General Star. The policy stated, in pertinent part:

> Conditions
>
> . . . .

    (B)     Insured's Duties In The Event of Occurrence, Claim or Suit

        (1)     In the event of an occurrence covered hereunder involving injuries or damages which, without regard to legal liability, appears likely to involve this Policy, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to the Company or any of its authorized agents as soon as practicable.

        (2)     If a claim is made or suit is brought against the Insured because of an occurrence which, without regard to legal liability, appears likely to involve this Policy, the Insured shall immediately forward to the Company every demand, notice, summons, or other process received by him or his representative.

(A96.)

Bennyhoff sought damages of $600,000 for her injuries. On January 5, 2000, Bennyhoff and CSSC participated in pre-trial settlement discussions before a mediator. After considering the merits, the mediator recommended a $75,000 settlement, but advised CSSC that a verdict could range as high as $250,000 to $300,000.

The parties failed to settle, and the case went to trial before the Philadelphia Court of Common Pleas. On June 21, 2000, the jury returned a verdict in favor of Bennyhoff in the amount of $3 million, which the court then molded to $2,010,100 to reflect Bennyhoff's comparative negligence. The verdict exceeded ATI's and National's combined insurance limits by approximately $750,000. It was not until

4

the jury reached its verdict that CSSC or National conceived that the Bennyhoff action was likely to involve General Star's excess policy.

On June 22, 2000, Kelly Meunier ("Meunier") of CSSC claimed she notified General Star of the unexpectedly large verdict. According to Meunier, she telephoned General Star's main number for the underwriting department and reported the details of the verdict to someone named "Janet" who answered the phone. Based on this conversation, Meunier testified at her deposition that she believed that Janet would report the information to the claims department and a file would be "set up." There is evidence in the record that shortly thereafter, Ted Gaisford ("Gaisford"), a claims manager at General Star, attempted to reach Meunier by email and telephone. In response, Meunier testified that she returned Gaisford's call and left him a voice message, but never spoke to him directly. It is undisputed that at this time, neither CSSC nor National provided written notice of the claim to General Star or provided General Star with any papers from the underlying suit in compliance with General Star's policy set forth above.

Post-trial, National took control of the case, purchasing an appeal bond from Fidelity & Deposit Company of Maryland ("Fidelity") in the amount of $2,500,511 to bond the full amount of the judgment plus 20%, as is required by state court rules to stay execution against a defendant/insured.

Apart from Meunier's initial conversation with Janet, National had no further contact with General Star during the entire post-trial period until March 26,

5

2003, when, at National's request, Meunier wrote to General Star to detail the Bennyhoff claim. Although the letter references her oral communication of the claim information in June 2000, it is undisputed that Meunier's March 2003 letter was the first written notice that General Star received. Pursuant to the terms of the policy, Meunier forwarded the summons and complaint to General Star. However, by letter dated April 8, 2003, General Star disclaimed coverage based on National's nearly three-year delay in providing written notice of the claim and suit papers.

Following the affirmance of the Bennyhoff judgment by the Pennsylvania Superior Court, on April 22, 2003, the Supreme Court of Pennsylvania denied leave for further appeal, and the judgment against ATI became subject to execution.

National demanded that Fidelity pay on the appeal bond. National then entered into a loan receipt agreement pursuant to which it advanced Fidelity $1,032,211.10 to cover General Star's portion of Fidelity's payment. Under the terms of the loan receipt agreement, Fidelity assigned National its rights against third parties arising from the Bennyhoff matter. National assumed any obligations Fidelity may have had to pursue claims against ATI or General Star in connection with the funds paid by Fidelity to Bennyhoff. National then filed this diversity action against General Star seeking indemnification as contractual and equitable subrogee of ATI or as an assignee of Fidelity.

National's action against General Star proceeded to cross motions for summary judgment. On June 9, 2005, the District Court granted summary judgment in favor of General Star and against National. The District Court concluded that written notice given just before the denial of the final appeal was tantamount to no notice at all, and that General Star was prejudiced as a matter of law by National's failure to provide notice.

The District Court filed a Supplemental Memorandum on June 13, 2005 in which it reiterated its conclusion that written notice was required. However, the District Court also expressed its belief that notice should have been given in advance of the trial. Its opinion in this regard was based on a mistaken understanding of the settlement value that the mediator placed on the case. The District Court stated, "The case had been submitted to mediation before a common pleas judge, who expressed the view that, because plaintiff would have difficulty in establishing liability before a jury, the case had a settlement value of $500,000 to $600,000. Thus, it should have been clear to the parties that 'without regard to legal liability' . . , the case would likely involve the excess policy." (A6-A7.) In actuality, the mediator placed a value on the case of $75,000 but cautioned that a jury verdict might be as high as $300,000.

Because we conclude that compliance with the written notice provision of General Star's policy was triggered only after the jury reached its verdict, the District Court's factual finding as to the settlement value of the case and its

7

conclusion that notice prior to trial was required is harmless error.

## II.

This Court exercises plenary review over a district court's grant of summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "We view the facts in the light most favorable to the party against whom summary judgment was entered." Woodside v. School Dist. of Phila. Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001) (quoting Foehl v. United States, 238 F.3d 474, 477 (3d Cir. 2001)).

## III.

Before we turn to the substance of the parties' arguments, we address two threshold issues: whether to apply Pennsylvania or California law and whether National has established its status as equitable subrogee.

## A.

In its Supplemental Memorandum, the District Court stated, "By way of further clarification, I have concluded that the case would be decided the same way, regardless of whether California law or Pennsylvania law is applied. If choice were necessary, I conclude that California law governs the interpretation and application of the insurance policy in question." (A7.) While we agree that California law governs, we set forth the

8

governing principles for the benefit of the parties.

In cases where federal jurisdiction is based on diversity of citizenship, the court applies the choice of law rules of the state in which the district court is located. J.C. Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 360 (3d Cir. 2004); see also Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). As this case was instituted in the Eastern District of Pennsylvania, we will therefore apply Pennsylvania choice of law rules. "'Under Pennsylvania choice of law rules, an insurance contract is governed by the law of the state in which the contract was made.'" J.C. Penney, 393 F.3d at 360 (quoting Crawford v. Manhattan Life Ins. Co., 221 A.2d 877, 880 (Pa. Super. 1966)). "'An insurance contract is "made" in the state in which the last act legally necessary to bring the contract into force takes place.'" Id. Generally, the "'last act is delivery of the policy to the insured and the payment of the first premium by him.'" Id. (quoting Ruhlin v. N.Y. Life Ins. Co., 106 F.2d 921, 923 (3d Cir. 1939)); see also CAT Internet Servs., Inc. v. Providence Washington Ins. Co., 333 F.3d 138, 141 (3d Cir. 2003) ("Pennsylvania conflict of laws principles dictate that an insurance contract is guided [sic] by the law of the state in which it is delivered.").

Here, the parties do not dispute that the General Star policy was delivered to ATI in Pasadena, California, which is ATI's principal place of business. ATI's California address appears on the Declarations page of the General Star policy. National offers no evidence to demonstrate that ATI paid its premiums from any other location. National recognizes the prevailing view that an insurance contract is governed by the law of the

9

state in which it was delivered, but argues alternatively that under an interests analysis,[1] Pennsylvania law might apply because the incidents giving rise to the underlying claim occurred in Pennsylvania and the subject of the underlying lawsuit was located in Pennsylvania.  See U.S. Fidelity & Guar. Co. v. Barron Indus., Inc., 809 F. Supp. 355, 359 (M.D. Pa. 1992).

We decline to deviate from our prior precedents and therefore hold that California law governs the insurance contract at issue.

## B.

At summary judgment, General Star argued that National was unable to establish itself as an equitable subrogee of ATI or as an assignee of Fidelity.  The District Court did not reach the merits of this argument, effectively assuming that National could demonstrate its status as equitable subrogee or assignee.  Because we agree with the District Court that National failed to comply with the express terms of the General Star policy, we likewise need not reach General Star's alternative argument that National is neither equitable subrogee nor assignee.

## IV.

There are two substantive issues on appeal.  The first deals with notice and the

---

[1] An interests analysis seeks to determine which state has the most significant contacts or relationship with the particular issue by examining the underlying interests behind conflicting laws among the different jurisdictions.  See Garcia  v. Plaza Oldsmobile Ltd., 421 F.3d 216, 220 (3d Cir. 2005).  Pennsylvania applies this analysis in tort cases; in insurance contract cases, however, we adhere to the rule stated above.

10

second with prejudice.  We turn first to notice.

A.

In its opening brief, National recognizes the importance of compliance with notice

provisions and agrees that it is neither fair nor consistent with reasonable commercial

expectations to disregard non-compliance with explicit notice requirements, especially if

such non-compliance results in an insurer being deprived of information or materials it

needs to protect the interests of the insured or its own.  That being said, National argues

that it was error for the District Court to have disregarded the evidence of oral

notification.

According to California's Code of Civil Procedure § 1858,[2] a court construing a

contract shall faithfully interpret the terms contained therein.  It is well-settled "that

where the terms of the [insurance] policy are plain and explicit, the court will indulge in

no forced construction so as to cast a liability upon the insurance company which it has

not assumed."  N.Y. Life Ins. Co. v. Hollender, 237 P.2d 510, 514 (Cal. 1951) (internal

citations omitted).  General Star contends that the terms of its policy are plain and

explicit.  The insured (1) must provide written notice of an occurrence likely to implicate

General Star's coverage and (2) "shall immediately forward" any relevant documents

---

[2] "In the construction of a statute or instrument, the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all."  Cal. Civ. Proc. Code § 1858.

related to the occurrence. National did neither, but now asks us to reverse the District Court's decision based on some evidence of oral notification, even though the District Court determined, correctly, that the evidence surrounding the claimed oral contacts was "confused and fragmentary."

National and CSSC are sophisticated entities well able to comply with the terms of an insurance policy. Indeed it is their business to do so. There is no evidence that General Star waived its right to written notice. Although there is some testimonial evidence that General Star can open a claim file based on an oral report of the basic policy information, there is no evidence that General Star had a custom or practice of accepting oral notice of which National was aware and on which it relied. Cf. Dickinson v. General Accident Fire & Life Assur. Corp., 147 F.2d 396, 398 (9th Cir. 1945) ("There was, moreover, evidence of a custom of the insurer, known to and relied on by the insured, of accepting oral notice of accident."). Accordingly, we conclude that National failed to comply with mandatory conditions of coverage.

General Star did not receive actual written notice until March 2003. National relies on Span, Inc. v. Assoc. Int'l Ins. Co., 277 Cal. Rptr. 828 (Cal. Ct. App. 1991), however, to argue that General Star had a duty of inquiry to investigate the Bennyhoff matter after it received what National claims amounts to constructive oral notice in June 2000. In Span, the duty of inquiry arose from the primary insurer's insolvency. The court held that the excess insurer was under an increased duty to inquire into the details of an underlying tort action because the presumption that the primary insurer would provide

12

experienced defense did not apply.

Span is factually distinguishable from the present situation in several important respects. First, we are not dealing with an insolvent primary insurer. Second, the evidence presented in Span demonstrated that Associated, the excess insurer, was informed in writing of the underlying personal injury action three years before the trial, not three years after. Id. at 830. Third, Associated filed a notice of appeal in the underlying action upon receipt of notice of the $1,276,000 judgment which penetrated the excess insurance layer. Id. Associated later voluntarily abandoned the appeal. Fourth, there was evidence that counsel for defendant in the underlying action had advised Associated of the trial dates and Associated "had refused to accept the tender of the defense or to offer any assistance in the trial of the underlying lawsuit." Id. at 831. Finally, there was evidence that counsel for Associated had appeared at the mandatory settlement conference in the declaratory relief action. Id.

The Span court concluded, as a matter of law, that

> Associated's knowledge of the *Ledesma* action and the insolvency of the primary carrier placed it on inquiry notice of the contents of the superior court file in the *Ledesma* action. Simple review thereof would have alerted Associated that Ledesma had filed a statement of damages seeking $1 million in general and $1 million in special damages, a demand for settlement in the amount of $650,000, and that Ledesma's damages had been described as "extensive" in an arbitration conference.

Id. at 839. Thus, "Associated . . . had sufficient knowledge of the underlying action as to amount to constructive notice its policy was likely to be involved." Id. at 829.

13

As discussed above, what evidence there was of oral notice to General Star in June 2000 was confused and fragmentary. General Star did not receive any updates about the progress of case, no suit papers were forwarded, it did not participate in a settlement conference and it was unaware of any post-trial appeals until just weeks before the final appeal was denied. Unlike Span, we conclude that General Star did not have "sufficient knowledge of the underlying action as to amount to constructive notice that its policy was likely to be involved." Id.

B.

The District Court also held that General Star was prejudiced as a matter of law by National's failure to provide timely written notice. In this regard, the Court found that General Star was denied any right to participate in the appeals or to attempt to broker a settlement for less than the full amount of the judgment. The District Court found undisputedly "that National Union and ATI did not pursue settlement discussions with the plaintiff in the underlying action, instead choosing to focus their efforts on appeal. . . . Settlement discussions would not have hindered the ability to press the appeal, and General Star should have had the opportunity to weigh in on the issue." (A3-A4.)

"In California, . . . there is no presumption of prejudice. Under California law, the insurer has the burden of proving actual and substantial prejudice, and a 'mere possibility' of prejudice will not suffice." Ins. Co. of Pa. v. Associated Int'l Ins. Co., 922 F.2d 516, 524 (9th Cir. 1990) (citations omitted); see also Shell Oil Co. v. Winterthur Swiss Ins. Co., 15 Cal. Rptr. 2d 815, 845 (Ct. App. 1993) ("California law is settled that a defense

14

based on an insured's failure to give timely notice requires the insurer to prove that it suffered substantial prejudice. Prejudice is not presumed from delayed notice alone. The insurer must show actual prejudice, not the mere possibility of prejudice.") (internal citations omitted). California law is imbued with a strong public policy against technical forfeitures in the insurance context. See Ins. Co. of Pa., 922 F.2d at 524. The "notice-prejudice" rule applies to excess insurers and reinsurers. See id. at 523. In fact, the requirement of prejudice is even more compelling in the excess insurance context. Id. "Unlike primary insurers, excess insurers have no right to control a lawsuit and thus have less need for early notice. Moreover, because primary insurers will usually provide experienced defense, the likelihood of prejudice from late notice is more remote." Id. (citing Trustees of the Univ. of Pa. v. Lexington Ins. Co., 815 F.2d 890, 898 (3d Cir. 1987)).

Here, however, there was no "mere possibility" of prejudice. Rather, the District Court correctly concluded that General Star was substantially prejudiced by National's failure to notify. General Star received notice a scant four weeks before the Pennsylvania Supreme Court denied the final appeal. National and ATI did not pursue or engage in any settlement discussions during the entire three-year, post-trial period. National's conduct deprived General Star of any opportunity to assess whether National's failure to explore settlement was reasonable and prevented General Star from participating in, and perhaps effecting, a better outcome.

V.

15

Accordingly, we will affirm the District Court's grant of summary judgment in favor of General Star.